[No. G037999. Fourth Dist., Div. Three. Apr. 30, 2008.]

SIERRA CLUB, Plaintiff and Appellant, v.
CITY OF ORANGE et al., Defendants and Respondents;
THE IRVINE COMPANY LLC et al., Real Parties in Interest and
Respondents.

526

**COUNSEL**

Law Offices of Frank P. Angel and Frank P. Angel for Plaintiff and Appellant.

David A. De Berry; Rutan & Tucker, Robert S. Bower and Jeffrey T. Melching for Defendants and Respondents.

Latham & Watkins, Christopher W. Garrett, Daniel P. Brunton and Ryan R. Waterman for Real Parties in Interest and Respondents.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Plaintiff Sierra Club sued defendant City of Orange and its city council (defendant) for certifying a combined supplemental environmental impact report and environmental impact report (SEIR/EIR) and approving land use development proposals for projects sought by real

parties in interest The Irvine Company LLC and Irvine Community Development LLC (collectively Irvine) on the ground defendant's actions violated the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.; all further statutory references are to the Public Resources Code unless otherwise indicated.) Although rejecting Irvine's request to dismiss the action for failure to timely file it, the trial court entered judgment denying the petition. (Code Civ. Proc., § 1094.)

Plaintiff appeals, contending the SEIR/EIR violates CEQA by failing to (1) disclose the project's proposed annexation boundaries; (2) evaluate the environmental effects of the project as a whole; and (3) provide an adequate and complete analysis of the project's water quality impacts, traffic impacts, and potentially feasible project alternatives. Irvine repeats its claim this action is barred by the statute of limitations. While we reject Irvine's statute of limitations claim, we nonetheless affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Background*

The project covers over 6,800 acres of undeveloped land in an unincorporated portion of Orange County within defendant's eastern sphere of influence. The proposed development within the project area is divided into four planned community parcels. The first is a 496-acre parcel named Santiago Hills II Planned Community (SH2PC), located westerly of State Route 241/261. The remainder of the project consists of a 6,300-plus-acre parcel named East Orange Planned Community (EOPC), the portion of which proposed for development is further subdivided into three sections, identified as EOPC Area 1 (EOPC1), EOPC Area 2 (EOPC2), and EOPC Area 3 (EOPC3). EOPC1 is east of State Route 241/261 and north of Santiago Canyon Road. EOPC2 is also north of Santiago Canyon Road easterly of EOPC1 and southeast of Irvine Lake. EOPC3 is located south of Santiago Canyon Road and southeast of EOPC2.

In the 1980's, after consultation with the County of Orange and Irvine, defendant certified a program-level EIR for the project area and adopted the East Orange General Plan. A supplemental project-level EIR (SEIR 1278) covering the SH2PC parcel was prepared and certified in 2000.

In the mid-1990's defendant and others, including the County of Orange, executed the Central Coastal Natural Communities Conservation Plan/Habitat Conservation Plan creating a habitat reserve covering over 37,000 acres that restricted residential, commercial, and industrial uses in the covered area. The project area falls within the boundaries of the conservation plan. Also, in

2001 Irvine added 11,000 acres to the Irvine Ranch Land Reserve, an area set aside in perpetuity as open space. A portion of this acreage covered land that had been previously designated for development in the East Orange General Plan.

In 2003, Irvine submitted a project application for a general plan amendment and other land use entitlements that would amend SEIR 1278 for SH2PC, plus affect the East Orange General Plan. On SH2PC, Irvine proposed to build over 1,700 residential units covering 384 acres with the remaining 112 acres as open space. Its EOPC1 proposal consisted of 1,100 residential units on 361 acres, leaving the remaining 69 acres as open space. On the 947-acre EOPC2 parcel, Irvine proposed to construct 1,200 residential units covering 599 acres, with an additional 212 acres dedicated to commercial development, and the remaining 136 acres as open space. Irvine's proposed development for the 45-acre EOPC3 parcel consisted of 50 residential units. For the balance of EOPC, Irvine proposed six acres dedicated to commercial development, 12 acres to institutional development, 258 acres for State Route 241/261's right-of-way, and 4,040 acres of open space.

Defendant issued a notice of preparation for a project-level supplemental EIR for SH2PC covering substantial proposed changes to the previously approved SEIR 1278, a project-level EIR for EOPC1, and a more general program-level EIR covering EOPC2 and 3 (SEIR/EIR) in September 2003. The draft SEIR/EIR was circulated for comment in late 2004, with the final SEIR/EIR with comments and responses issued in May 2005.

Beginning in late September 2005, the city council held several public hearings on the SEIR/EIR. On November 8, it certified the SEIR/EIR, which included findings of fact and a statement of overriding considerations, approving a project alternative that eliminated the residential units on EOPC3. The council also adopted a general plan amendment, a runoff management plan (ROMP), urban design guidelines, tentative tract maps for the SH2PC and EOPC1 parcels, plus an affordable housing conditional use permit. Defendant issued a notice of determination concerning these approvals on November 9 which the county clerk posted the same day.

Because the November 9 notice contained an erroneous approval date, defendant issued and posted a second notice of determination on November 14, correctly stating the approval had occurred on November 8, and parenthetically explaining the previously filed notice contained an error. Defendant issued and posted another notice of determination on November 22 noting defendant's subsequent approval of two prezoning changes and a preannexation development agreement with Irvine.

## 2. *The Present Action*

Plaintiff filed its petition on December 14. The first cause of action alleges the SEIR/EIR violated CEQA because it failed to (1) disclose the baseline physical conditions, particularly concerning the water quality for the project-affected creeks; (2) describe the project and its setting; (3) disclose the project's impacts and proposed mitigating measures; and (4) consider the project as a whole by breaking up the impacts analysis between SH2PC, EOPC1, and EOPC2 and 3. Plaintiff also alleges the SEIR/EIR's analysis of alternative projects was defective. The second count alleges (1) the SEIR/EIR's certification and the project's approval were not supported by substantial evidence or legally adequate findings; and (2) defendant's mitigation findings violated CEQA because they were based on an inadequate SEIR/EIR, deferred formulation of mitigation measures to the future, and included unenforceable measures. The third count seeks injunctive relief based on the foregoing alleged CEQA violations.

Defendant and Irvine answered the petition and defendant moved for judgment. Irvine joined in defendant's motion and filed several other motions, plus a request for judicial notice. Among other contentions, Irvine asserted plaintiff failed to timely file its petition, and the petition raised arguments either not asserted during the administrative proceedings or based on evidence outside the administrative record. The trial court denied Irvine's statute of limitations defense, but granted its other requests and defendant's motion for judgment.

## DISCUSSION

### 1. *Standard of Review*

Where an EIR is challenged as being legally inadequate, a court presumes a public agency's decision to certify the EIR is correct, thereby imposing on a party challenging it the burden of establishing otherwise. (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 723 [39 Cal.Rptr.3d 189]; *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 117 [104 Cal.Rptr.2d 326].) To establish noncompliance by the public agency in a CEQA proceeding, an opponent must show "there was a prejudicial abuse of discretion" (§ 21168.5), which occurs when either "the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence" (*ibid.*). (See *Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426 [53 Cal.Rptr.3d 821, 150 P.3d 709].)

In *Vineyard*, the court recognized that "[j]udicial review of these two types of error differs significantly . . . ." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova, supra*, 40 Cal.4th at p. 435.) Whether an "agency has employed the correct procedures," is reviewed "de novo . . . 'scrupulously enforc[ing] all legislatively mandated CEQA requirements' [citation] . . . ." (*Ibid.*) But an "agency's substantive factual conclusions" are "accord[ed] greater deference." (*Ibid.*) "In reviewing for substantial evidence, the reviewing court 'may not set aside an agency's approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable,' for, on factual questions, our task 'is not to weigh conflicting evidence and determine who has the better argument.' [Citation.]" (*Ibid.*)

In a footnote, plaintiff suggests *Vineyard* "clarifie[d]" the applicability of the standards of appellate review by limiting substantial evidence analysis "to factual disputes over whether adverse effects have been mitigated or could be better mitigated." This assertion is incorrect. *Vineyard* merely recites the now familiar standards of judicial review in CEQA cases and declares that "[i]n evaluating an EIR for CEQA compliance, then, a reviewing court must adjust its scrutiny to the nature of the alleged defect, depending on whether the claim is predominantly one of improper procedure or a dispute over the facts." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova, supra*, 40 Cal.4th at p. 435.)

Finally, "[a]n appellate court's review of the administrative record for legal error and substantial evidence in a CEQA case, as in other mandamus cases, is the same as the trial court's: the appellate court reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo. [Citations.] We therefore resolve the substantive CEQA issues . . . by independently determining whether the administrative record demonstrates any legal error by the [agency] and whether it contains substantial evidence to support the [agency's] factual determinations." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova, supra*, 40 Cal.4th at p. 427.)

## 2. *Statute of Limitations*

As noted, Irvine reasserts its statute of limitations claim in this appeal. (Code Civ. Proc., § 906 ["party in whose favor the judgment was given, may, without appealing . . . , request the reviewing court to . . . review any . . . matter[] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal . . . "].) While this issue presents a close question, we conclude the statute of limitations does not bar plaintiff's action.

■ To be timely, an action challenging the adequacy of an EIR must be commenced within 30 days after the county clerk posts the notice of determination that the project's lead agency has filed with it. (§§ 21152, subds. (a), (c), 21167, subd. (c); *Citizens of Lake Murray Area Assn. v. City Council* (1982) 129 Cal.App.3d 436, 440–441 [181 Cal.Rptr. 123].) In addition, the 30-day limitations period does not begin to run if the notice of determination is substantively defective in failing to properly describe the lead agency's actions. (§ 21152, subd. (a); see *International Longshoremen's & Warehousemen's Union v. Board of Supervisors* (1981) 116 Cal.App.3d 265, 273 [171 Cal.Rptr. 875].) A notice of a determination's adequacy is governed by the substantial compliance doctrine which " 'means *actual* compliance in respect to the substance essential to every reasonable objective of the statute' " even though it may contain " 'technical imperfections of form . . . .' [Citations.]" (*International Longshoremen's & Warehousemen's Union v. Board of Supervisors, supra,* 116 Cal.App.3d at p. 273.)

Defendant filed, and the county clerk posted, the original notice of determination on November 9, the day after its city council certified the SEIR/EIR and approved Irvine's project. But this notice erroneously stated certification and approval occurred on October 25, 2005. While section 21152 does not require a notice of determination to include the date of approval, as the trial court noted, this information is mandated by the Guidelines for Implementation of CEQA (Guidelines; Cal. Code Regs., tit. 14, § 15000 et seq.), which declare a notice of determination "shall include" "the date on which the agency approved the project." (Cal. Code Regs., tit. 14, § 15094, subd. (b)(3).) Consequently, the November 9 notice failed to actually comply with all matters of substance. (*International Longshoremen's & Warehousemen's Union v. Board of Supervisors, supra,* 116 Cal.App.3d at p. 273.) Furthermore, defendant did not title the amended notice filed on November 14 as a "corrected notice." Thus, although not bound by the trial court's findings, we agree with its conclusion that plaintiff "had a right to rely on th[e] second Notice of Determination."

3. *The SEIR/EIR's Description of the Project*

Section 2.1 of the final SEIR/EIR describes "[t]he proposed project area for the Santiago Hills II and East Orange Planned Communities" as "occup[ying] approximately 6,800 acres at the eastern edge of the City" that, although "located in unincorporated Orange County," was "within the City's Sphere of Influence . . . ." This section includes two maps of the area, one regional and one topographical, the latter of which contained a superimposed blue line outlining the project area and markers for each planned community's location within it.

Citing the acknowledgement in section 2.4.10 of the report that "[t]he City is still determining the exact boundaries of areas to be annexed because it is anticipated that large amounts of open space associated with this proposed project area would remain in unincorporated Orange County," plaintiff argues the SEIR/EIR fails to "disclose the boundaries of the areas the project proposes for annexation to the city." This argument lacks merit.

To fulfill its role of ensuring the lead agency and the public have enough information to ascertain the project's environmentally significant effects, assess ways of mitigating them, and consider project alternatives, an EIR must provide " '[a]n accurate, stable and finite project description . . . .' " (*Save Round Valley Alliance v. County of Inyo* (2007) 157 Cal.App.4th 1437, 1448 [70 Cal.Rptr.3d 59]; see *County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 193 [139 Cal.Rptr. 396].) The final SEIR/EIR meets this standard. It contains a written description of the project area, plus maps depicting both the extent of defendant's sphere of influence and the boundary of the project area. (Cal. Code Regs., tit. 14, § 15124, subd. (a).) Plaintiff impliedly admitted as much in its petition, which identified "[t]he project['s] . . . geographic components" and described in detail the location of all four planned community areas. In addition, the SEIR/EIR includes a description of the development proposed by Irvine within each planned community.

Plaintiff's reliance on defendant's admission it had not yet "determin[ed] the exact boundaries of areas to be annexed" ignores the initial paragraph of this section, which declares: "The Santiago Hills II and East Orange Planned Communities are anticipated to be annexed into the City in the future," with annexation to be completed "in phases to be determined by the City after having taken action on the general plan amendments and zoning changes for the Santiago Hills II and East Orange Planned Communities." Since the SEIR/EIR reviews the entire project area, the mere fact defendant may eventually annex only a portion of it does not render the approval an abuse of its discretion under CEQA. "The action approved need not be a blanket approval of the entire project initially described in the EIR. If that were the case, the informational value of the document would be sacrificed. Decision-makers should have the flexibility to implement that portion of a project which satisfies their environmental concerns." (*Dusek v. Redevelopment Agency* (1985) 173 Cal.App.3d 1029, 1041 [219 Cal.Rptr. 346] [rejecting CEQA violation claim where defendant agency approved project narrower than one described in EIR].)

Plaintiff's reliance on *Santiago County Water Dist. v. County of Orange* (1981) 118 Cal.App.3d 818 [173 Cal.Rptr. 602] is inapposite. There the court invalidated an EIR for the operation of a sand and gravel mining operation,

finding the report inadequate, not because it failed to describe the project's boundaries, but rather due to its failure to describe "the facilities that will have to be constructed to deliver water to the mining operation, or facts from which to evaluate the pros and cons of supplying the amount of water that the mine will need." (*Id.* at p. 829.)

Citing a comment from the Orange County Local Agency Formation Commission (LAFCO) that "changes in governmental boundaries for the City of Orange or for other service providers are not fully addressed," plaintiff suggests the SEIR/EIR fails to provide sufficient information to allow LAFCO to perform its duties. The law and the administrative record do not support this claim.

■ LAFCO's purposes include ensuring orderly and efficient municipal expansion. (Gov. Code, §§ 56300, 56301; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495 [87 Cal.Rptr.2d 702, 981 P.2d 543].) Its responsibilities also include the previous determination of defendant's sphere of influence (Gov. Code, §§ 56076, 56425, subd. (a)), an area that includes SH2PC and EOPC1, 2, and 3. As Irvine notes, plaintiff's quotation from the LAFCO comment is misleading because it omits the following sentence, which declared LAFCO's "underst[anding] that [while] some open space areas may not be annexed to the City of Orange, the boundaries of the areas to be annexed are relatively fixed, particularly with the Santiago Hills II area." Furthermore, the SEIR/EIR's discussion of the potential impacts of annexation in chapter 3 contains a table "identif[ying] the agencies that currently serve the project site and that would serve the project site with approval of the proposed annexation" and "[a]lso indicat[ing] . . . the SEIR/EIR section where potential physical impacts associated with those services are addressed."

■ Government Code section 56668 does not alter our conclusion. It describes the factors LAFCO must consider when it "review[s] . . . a proposal," i.e., a petition or a resolution from a local agency's legislative body proposing a change of organization such as an annexation of land. (Gov. Code, §§ 56021, 56053, 56054, 56069.) Since the SEIR/EIR acknowledges defendant does not currently intend to annex the project area, the report does not constitute a proposal under section 56668. But even if it did, LAFCO's comment acknowledged "the boundaries of [SH2PC, and EOPC1, 2, and 3] are relatively fixed . . . ."

Thus, we conclude plaintiff's attack on the SEIR/EIR's project description lacks merit.

### 4. Plaintiff's Fallacy of Division Claim

#### a. Background

The SEIR/EIR's introductory chapter declares "[t]his document constitutes both an SEIR analyzing the Santiago Hills II Planned Community area and an EIR that analyzes the remainder of the proposed project." Chapter 3 explains that the scope of the "analysis [for SH2PC] addresses . . . substantial changes in the revised Santiago Hills II Planned Community from that previously approved," the discussion "[f]or the proposed East Orange Planned Community Area 1" is "a project-level analysis . . . because tentative tract maps have been submitted . . . ," but "[f]or the proposed East Orange Planned Community Areas 2 and 3 . . . along with remaining areas, a program-level analysis of potential impacts was undertaken reflecting the conceptual level of planning that has occurred to date."

██ Plaintiff's opening brief asserts that, although the SEIR/EIR correctly "define[s] the project," it violates CEQA because the report's "impacts analyses in many . . . fields of environmental inquiry" "break up impacts by separate project components . . . ." Irvine argues plaintiff cannot assert this issue because it failed to exhaust its administrative remedies. We agree.

#### b. The Exhaustion of Administrative Remedies Doctrine

██ "No action or proceeding may be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." (§ 21177, subd. (a).) This exhaustion of administrative remedies requirement is jurisdictional. (*Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1199 [22 Cal.Rptr.3d 203].) "The rationale for exhaustion is that the agency ' "is entitled to learn the contentions of interested parties before litigation is instituted. If [plaintiffs] have previously sought administrative relief . . . the [agency] will have had its opportunity to act and to render litigation unnecessary, if it had chosen to do so." ' [Citation.]" (*Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1394 [64 Cal.Rptr.3d 79]; see also *State Water Resources Control Bd. Cases, supra*, 136 Cal.App.4th at p. 794.)

To advance the exhaustion doctrine's purpose "[t]he 'exact issue' must have been presented to the administrative agency . . . ." (*Mani Brothers Real Estate Group v. City of Los Angeles, supra*, 153 Cal.App.4th at p. 1394.) While " 'less specificity is required to preserve an issue for appeal in an

administrative proceeding than in a judicial proceeding' because, . . . parties in such proceedings generally are not represented by counsel . . .' [citation]" (*id.* at p. 1395), "generalized environmental comments at public hearings," "relatively . . . bland and general references to environmental matters" (*Coalition for Student Action v. City of Fullerton* (1984) 153 Cal.App.3d 1194, 1197, 1198 [200 Cal.Rptr. 855]), or "isolated and unelaborated comment[s]" (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 282 [42 Cal.Rptr.3d 537]) will not suffice. The same is true for " '[g]eneral objections to project approval . . . .' [Citations.]" (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 910 [69 Cal.Rptr.3d 105].) " '[T]he objections must be sufficiently specific so that the agency has the opportunity to evaluate and respond to them.' [Citation.]" (*Id.* at p. 909.)

"The petitioner bears the burden of demonstrating that the issues raised in the judicial proceeding were first raised at the administrative level. [Citation.]" (*Porterville Citizens for Responsible Hillside Development v. City of Porterville, supra,* 157 Cal.App.4th at p. 909.) An appellate court employs a de novo standard of review when determining whether the exhaustion of administrative remedies doctrine applies. (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873 [50 Cal.Rptr.3d 636].)

### c. *Failure to Exhaust Administrative Remedies*

In response to Irvine's failure to exhaust its administrative remedies claim, plaintiff employs a string-cite response, referring to numerous pages of the administrative record with little or no explanation of how each citation supports the assertion defendant was "fairly apprized [*sic*]" of its noncompliance with CEQA. What's more, none of the record citations preserve plaintiff's fallacy of division claim for judicial review.

Plaintiff cites a statement in a 2002 document defendant's Community Development Department sent to environmental consulting firms seeking proposals and qualifications for preparation of the SEIR/EIR describing the project. A second supporting reference is to an October 2003 e-mail from a consultant relating to the traffic modeling scenarios for preparation of the draft SEIR/EIR. As Irvine notes, these statements, made before completion of the draft SEIR/EIR, do not constitute allegations of CEQA noncompliance during the public comment period or the public hearing on the project's approval. (§ 21177, subd. (a).)

Plaintiff's reliance on *Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683 [58 Cal.Rptr.3d 102] and *Gonzales v. City of Santa Ana* (1993) 12 Cal.App.4th 1335 [16 Cal.Rptr.2d 132] lacks merit.

*Gonzales* is inapposite because it involved litigation under the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.), not CEQA, and the public comments cited in the opinion sufficed to preserve the issue for judicial review. (*Gonzales v. City of Santa Ana, supra*, 12 Cal.App.4th at pp. 1348–1349, fn. 17.)

■ In *Woodward*, the court held the "administrative remedies [requirement] w[as] exhausted" by a "comment letter submitted . . . in response to the notice of preparation" for an EIR. (*Woodward Park Homeowners Assn., Inc. v. City of Fresno, supra*, 150 Cal.App.4th at p. 712.) We find *Woodward* unpersuasive. Section 21177 specifically requires "the alleged grounds for noncompliance" be "presented . . . during the public comment period provided by this division or prior to the close of the public hearing on the project . . . ." (§ 21177, subd. (a).) In applying section 21177, we must assume the Legislature meant what it said and interpret the statute according to its plain meaning. (*Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1121 [71 Cal.Rptr.2d 1].) **(8)** Comments in response to an agency's issuance of a notice to prepare an EIR do not satisfy section 21177's exhaustion requirement.

The remainder of plaintiff's record citations fare no better. It cites (1) a public comment that "[t]he air quality chapter does not include a detailed analysis of construction emissions" and seeks a compilation of "[t]he construction schedule, phases, number of workers, worker trips, construction equipment, and truck traffic . . . to determine peak daily construction emissions"; (2) a letter in response to the draft SEIR/EIR, in part, noting, "[i]ncreased air pollution . . . caused by grading equipment and trucks" and requesting "a total estimate of these toxic discharges, and some discussion of their effect on public health"; (3) another letter which describes the use of a single document for both a project-level and a program-level EIR as "confusing" and requesting "a detailed chronology of the environmental evaluation of the[] . . . proposed developments"; and (4) a subsequent statement in the letter declaring "[t]he lead agency should identify any potential adverse air quality impacts that could occur from all phases of the project and all air pollutant sources related to the project." These constitute the type of "isolated and unelaborated comment[s] by . . . member[s] of the public" that courts have held fail to "fairly rais[e] the piecemealing argument to the City." (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego, supra*, 139 Cal.App.4th at p. 282 [finding comment that " 'there ha[s] also been *a project splitting*, ignoring environmental issues such as traffic and light, ignoring unusual issues . . . , ignoring the cumulative effects and so on . . .' " did not preserve petitioner's piecemealing claim].)

### 5. The SEIR/EIR's Water Quality Impacts Analysis

#### a. Background

The SEIR/EIR notes SEIR 1278 for SH2PC established several mitigation measures for water resources, including the development and approval of a ROMP to achieve, among other objectives, water quality. For the current project, two ROMP's were prepared; one covering SH2PC and EOPC1 and another for EOPC2 and 3, with each ROMP consisting of two volumes, one for hydrology and the second for water quality. The SEIR/EIR also notes the ROMP's "were considered as part of the project . . . ." "In addition . . . , assessments were also conducted . . . regarding water quality within Peters Canyon Reservoir and Irvine Lake . . . ," which "examined water quality within the reservoirs based upon all inflows . . . from their tributary watersheds, inclusive of predicted flows from the Santiago Hills Phase II Planned Community and East Orange Planned Community Areas 1, 2, and 3." The ROMP's and reservoir water quality analyses are in appendix B and were circulated with the draft SEIR/EIR.

The report indicated the water resources mitigation measures from the 2000 SEIR had been implemented and concluded no new mitigation measures would be required to reduce the project's potential impacts to less than significant.

Plaintiff now contends the SEIR/EIR fails to comply with CEQA because its discussion of the project's water quality impacts "contains very little information on baseline pollutant levels in Irvine Lake," and "offers a highly incomplete and conclusory discussion" of the project's consistency with the Santa Ana River Basin Plan (Basin Plan) that regulates regional water quality. Irvine disputes these claims and again argues the exhaustion of administrative remedies doctrine bars plaintiff from asserting them. The first part of plaintiff's claim lacks substantive merit, and the latter portion has not been preserved for judicial review.

#### b. Failure to Exhaust Administrative Remedies

Plaintiff again attempts to show it exhausted its administrative remedies by employing a conclusory string-cite response, with many of the record references simply deposited in a footnote. The references include comments by consultants or correspondence in response to defendant's notice of the preparation issued in advance of the draft SEIR/EIR which, as explained above, fail to satisfy the requirements of section 21177, subdivision (a).

Even as to the comments submitted by agencies and members of the public either in response to the draft SEIR/EIR or before the city council's hearing

on project approval, the bulk of the materials cited in the opening brief involve only "generalized environmental comments," "relatively . . . bland and general references to environmental matters" (*Coalition for Student Action v. City of Fullerton, supra,* 153 Cal.App.3d at pp. 1197, 1198), "isolated and unelaborated comment[s]" (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego, supra,* 139 Cal.App.4th at p. 282), or " '[g]eneral objections to project approval . . . .' [Citations.]" (*Porterville Citizens for Responsible Hillside Development v. City of Porterville, supra,* 157 Cal.App.4th at p. 910.) Concerning Basin Plan consistency, the only arguably relevant comment appears in a January 2004 letter to defendant's planning department summarizing a consultant's "peer review of the Surface Water Quality Technical Reports and . . . (ROMP['s]) prepared . . . for the . . . [p]roject[]." The letter notes, "Minimization, if not elimination, of non-storm runoff should be a Project design objective in order to . . . be consistent with the Model Water Quality Management Plan . . . approved by the Santa Ana Regional Water Quality Control Board . . . ." This comment fails to satisfy the "exact issue" requirement for the exhaustion of administrative remedies doctrine. (*Mani Brothers Real Estate Group v. City of Los Angeles, supra,* 153 Cal.App.4th at p. 1394.) Thus, plaintiff fails to establish judicial review of the Basin Plan consistency contention was preserved.

 c. *Irvine Lake's Baseline Pollution Levels*

As for plaintiff's Irvine Lake baseline water quality conditions argument, a comment by the County of Orange in response to the draft SEIR/EIR cites the report's statement that " 'monitoring data indicate that the reservoir does not consistently meet certain water quality objectives . . . .' " It also notes "[t]he [draft report's] discussion does not, however, specify what is not being met. This is important in order to assess potential impacts due to the proposed development." This comment sufficed to preserve the lake baseline information claim for judicial review. (*Galante Vineyards v. Monterey Peninsula Water Management Dist., supra,* 60 Cal.App.4th at pp. 1119–1121.)

 Nonetheless, plaintiff's argument fails on its merits. To ensure meaningful assessment of a proposed project's significant environmental impacts and the consideration of mitigation measures, an EIR must provide a "description of the existing physical conditions on the property at the start of the environmental review process . . . ." (*Save Our Peninsula Committee v. Monterey County Bd. of Supervisors, supra,* 87 Cal.App.4th at p. 119; see also Cal. Code Regs., tit. 14, § 15125, subd. (a).)

Relying solely on the contents of the SEIR/EIR itself, plaintiff argues the report "contains one, vague and conclusory sentence addressing baseline

conditions in Irvine Lake," and complains "[t]his sketchy reference reveals no information specifying pollutant levels (e.g., biochemical or chemical oxygen demand), or addressing other constituents of concern (e.g., total dissolved solids, heavy metals, pesticides and herbicides, hydrocarbons etc.)."

Again, plaintiff fails to accurately summarize the relevant facts. The SEIR/EIR discusses the environmental setting for Irvine Lake in section 3B.3.3.2. The report's surface water quality discussion for the EOPC parcels identifies the main sources of water for Irvine Lake and acknowledges the lake receives runoff from all three EOPC sites. As for the lake's water quality the report declares, "monitoring data indicate that the . . . reservoir[] do[es] not consistently meet certain water quality objectives" and cites appendix B-2, the ROMP volume analyzing water quality for SH2PC and EOPC1 for further detail.

As Irvine notes, the ROMP provides the information plaintiff contends is missing from the SEIR/EIR, including tables for the water quality and the presence of pathogens in not only the lake but the other relevant water resources. In a footnote, plaintiff grudgingly admits "the missing information" appears in the ROMP, but, arguing from the other side of its mouth, then describes it as mere "raw . . . data." Plaintiff cannot have it both ways.

 In addition, Irvine correctly asserts the Guidelines permit the use of appendices containing technical detail and the incorporation of documents in the preparation of an EIR. (Cal. Code Regs., tit. 14, § 15147 ["Placement of highly technical and specialized analysis and data in the body of an EIR should be avoided through inclusion of supporting information and analyses as appendices to the main body of the EIR" that "may be prepared in volumes separate from the basic EIR document" if "readily available for public examination"]; Cal. Code Regs., tit. 14, § 15150, subd. (a) ["An EIR . . . may incorporate by reference all or portions of another document which is a matter of public record or is generally available to the public," and "the incorporated language shall be considered to be set forth in full as part of the text of the EIR . . ."].) In this case, the ROMP and water quality analyses were available for public viewing along with the draft SEIR/EIR and made part of the final SEIR/EIR. Consequently, plaintiff "cannot now claim that the [SEIR/]EIR d[id] not sufficiently describe the existing" water quality conditions of Irvine Lake or the project's other water resources. (*San Francisco Ecology Center v. City and County of San Francisco* (1975) 48 Cal.App.3d 584, 595 [122 Cal.Rptr. 100].)

Finally, while plaintiff attempts to characterize the SEIR/EIR's defects as procedural in nature, in part it disputes the SEIR/EIR's conclusions and defendant's findings concerning the project's environmental impacts. Plaintiff

has waived review of the latter contentions by failing to present a complete summary of the evidence on appeal. "As with all substantial evidence challenges, an appellant challenging an EIR for insufficient evidence must lay out the evidence favorable to the other side and show why it is lacking. Failure to do so is fatal. A reviewing court will not independently review the record to make up for appellant's failure to carry his burden. [Citation.]" (*Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1266 [15 Cal.Rptr.3d 176].)

### 6. *The SEIR/EIR's Traffic Impacts Analysis*

#### a. *Background*

Section 3J of the SEIR/EIR analyzes the project's potential impacts on traffic and circulation. It "discusses the potential traffic and transportation impacts associated with the proposed project, which consists of three distinct components: [¶] 1. Changes to the previously approved development plan for Santiago Hills II Planned Community. . . . [¶] 2. The proposed development plan for the East Orange Planned Community. [¶] 3. Proposed amendments to the Orange County [Master Plan of Arterial Highways]. . . ." The report further explains that, "For [SH2PC], which has a previously certified environmental document [SEIR 1278], the analysis addresses only substantial changes . . . from that previously approved, substantial changes in the setting or regulatory setting related to the [SH2PC] study area, or new information related to the [SH2PC] study area that was not known at the time that 2000 SEIR 1278 was certified."

The report explains that "[e]valuation of roadway system performance is based on level of service (LOS) analysis of each roadway segment or intersection. Traffic LOS designations range from 'A' through 'F' with LOS 'A' representing free flow conditions and LOS 'F' representing severe traffic congestion. LOS is measured by comparing the existing or projected future traffic volume with the capacity of the roadway or intersection [V/C]." In addition, the SEIR/EIR notes "LOS 'D' . . . is the performance standard that has been adopted by the local jurisdictions for . . . intersections in the study area" not covered by Orange County's Congestion Management Plan.

The SEIR/EIR also includes appendix G. It contains a traffic impact analysis for the project area, providing information on the "current average daily traffic (ADT) volumes on the study area circulation . . . based on traffic counts collected in 2002 and 2003," graphs summarizing daily trip estimates "for the proposed . . . plan" and "[t]he difference in daily trip generation between the proposed . . . plan and the current [SEIR 1278 plan]," and illustrations of "ADT volumes on the study area circulation system under

existing conditions plus the approved [SH2PC] development plan . . . under existing conditions plus the proposed [SH2PC] development plan," both of which "also indicate[s] the ADT differences compared to existing conditions without the [SH2PC] development."

Both the SEIR/EIR and appendix G estimate the development of SH2PC, EOPC1, and EOPC2 would generate nearly 43,000 in daily trips consisting of 16,453 in SH2PC, 12,146 in EOPC1, and 14,344 in EOPC2. For SH2PC, the estimate is 3 percent less than the 16,960 daily trips estimated in SEIR 1278. In approving the SEIR/EIR, the city council incorporated project design features "expand[ing] and improv[ing] upon the mitigation measures required in SEIR 1278."

*b. SH2PC's Baseline Traffic Conditions*

Plaintiff argues the SEIR/EIR's traffic impacts analysis violates CEQA, in part, by "includ[ing] in[] the baseline . . . existing traffic conditions the 16,690 trips that would have been generated by the never-built—and since-abandoned—2000 SH2PC development plan"; "[h]ence, the baseline used for discussing, and determining the degree of significance of, project-related traffic impacts . . . includes nonexistent physical conditions in the affected area." Defendant disputes this contention. In a footnote, it also claims plaintiff failed to exhaust its administrative remedies concerning SH2PC's baseline conditions. Since this approach violates the requirement that arguments be placed "under a separate heading or subheading summarizing the point" (Cal. Rules of Court, rule 8.204(a)(1)(B)), we need not discuss this issue. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 160 [35 Cal.Rptr.3d 745]; *Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1562 [5 Cal.Rptr.3d 866].)

Nonetheless, this time plaintiff's argument fails to provide an accurate summary of both the record and the law. The administrative record clearly acknowledges development of SH2PC will produce nearly 16,500 daily vehicular trips and the SEIR/EIR identifies mitigation measures to reduce the potential adverse impacts of these trips along with other mitigation measures from the EOPC developments. Nothing in the record supports plaintiff's assertion "the SEIR/EIR in effect subtracts from the project's impacts . . . all . . . traffic trips attributable to its revised SH2PC subpart" and "trips . . . allocated to the 2000 SH2PC project . . . ."

Plaintiff also ignores the applicable law. The portion of the SEIR/EIR it challenges relates to SH2PC, the parcel subject to previous and now final CEQA approvals. Defendant reviewed the current development for this project as a supplement to the SEIR 1278. Section 21166 provides that

"[w]hen an environmental impact report has been prepared for a project pursuant to this division," a "subsequent or supplemental environmental impact report" is required only if "[s]ubstantial changes are proposed in the project" or "occur with respect to the circumstances under which the project is being undertaken" that "require major revisions in the environmental impact report," or "[n]ew information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." In addition the CEQA Guidelines allow a "supplement to [an] EIR" to "contain only the information necessary to make the previous EIR adequate for the project as revised." (Cal. Code Regs., tit. 14, § 15163, subd. (b).)

 Case law also supports this conclusion. "When a lead agency is considering whether to prepare an SEIR, it is specifically authorized to limit its consideration of the later project to effects not considered in connection with the earlier project. [Citation.]" (*Temecula Band of Luiseño Mission Indians v. Rancho Cal. Water Dist.* (1996) 43 Cal.App.4th 425, 437 [50 Cal.Rptr.2d 769]; see also *Benton v. Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1477 [277 Cal.Rptr. 481] ["we are satisfied that the project before the board was a modification of the existing . . . project, not an entirely new project"]; *Fund for Environmental Defense v. County of Orange* (1988) 204 Cal.App.3d 1538, 1544 [252 Cal.Rptr. 79] [" '[S]ection 21166 comes into play precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired (§ 21167, subd. (c)), and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process' "].) The cases cited by plaintiff are inapposite since each involved circumstances where there had been no prior CEQA approval. We conclude the SEIR/EIR properly describes and considers the baseline traffic conditions.

### c. *Santiago Canyon Road*

Plaintiff contends the SEIR/EIR fails to properly describe the project's environmental setting by not considering the inconsistency in traffic analysis methodologies required by its general plan and Orange County's general plan as they relate to the traffic impacts on Santiago Canyon Road. It argues "the SEIR/EIR must *disclose* traffic impacts on Santiago Canyon Road, in the manner in which they must be disclosed under the county general plan." This argument lacks merit.

Section 15125, subdivision (d) of the CEQA Guidelines declares an "EIR shall discuss any inconsistencies between the proposed project and applicable general plans and regional plans." (Cal. Code Regs., tit. 14, § 15125, subd. (d).) Currently, the portion of Santiago Canyon Road covered by the

project is under Orange County's jurisdiction. Plaintiff asserts the growth management element of the County's general plan requires the LOS (level of service) on Santiago Canyon Road be maintained at LOS "C," as analyzed using the Highway Capacity Manual (HCM) method. (*Endangered Habitats League, Inc. v. County of Orange* (2005) 131 Cal.App.4th 777, 783 [32 Cal.Rptr.3d 177].) Defendant's general plan requires the use of different methodology to measure traffic impacts, the V/C (volume/capacity) method, and its circulation element authorizes LOS "D," as the acceptable level of service on city streets.

■ Plaintiff acknowledges that " '[a] plan is "applicable" when it has been adopted and the project is subject to it . . . .' " (See *Chaparral Greens v. City of Chula Vista* (1996) 50 Cal.App.4th 1134, 1145, fn. 7 [58 Cal.Rptr.2d 152] [to be applicable, plan must be "legally applicable . . . as to a particular project"].) Here, if the project proceeds, defendant will annex the portion of Santiago Canyon Road covered by it. At that point, the road will be governed by the requirements of the city's general plan, not that of the county. **(13)** " 'CEQA requires an EIR to reflect a good faith effort at full disclosure; it does not mandate perfection, nor does it require an analysis to be exhaustive.' [Citation.]" (*Chaparral Greens v. City of Chula Vista, supra*, 50 Cal.App.4th at p. 1145.)

Plaintiff urges "[t]he issue . . . [is] not whether the project meets the laxer method for determining LOS under the *city's* general plan," and denies it is "mount[ing] a challenge to the city's selection of its threshold of significance for determining traffic impacts." But it cites to information in the administrative record it claims "*supports* the conclusion that contrary to the SEIR/EIR, evaluation of the project's traffic impacts on Santiago Canyon Road under HCM methodology, yields cumulative impacts substantially more severe (LOS change) than evaluation of such impacts under V/C methodology (no LOS change)." This argument exceeds our scope of review.

Since the purpose of an EIR is to provide detailed information on the potentially significant environmental effects of a project that a public agency is either considering implementing or asked to approve, judicial "[r]eview is confined to whether an EIR is sufficient as an informational document." (*Defend the Bay v. City of Irvine, supra*, 119 Cal.App.4th at p. 1265; see also *Chaparral Greens v. City of Chula Vista, supra*, 50 Cal.App.4th at p. 1142.) "[W]e must defer to [the agency's] substantive conclusions, so long as the decisions are 'supported by substantial evidence in the light of the whole record' and there was no prejudicial abuse of discretion. [Citations.]" (*Chaparral Greens v. City of Chula Vista, supra*, 50 Cal.App.4th at p. 1143.) "It is not our function to pass on the correctness of the EIR's environmental conclusions, but only upon its sufficiency as an informative document.

[Citation.]" (*Sequoyah Hills Homeowners Assn. v. City of Oakland* (1993) 23 Cal.App.4th 704, 712 [29 Cal.Rptr.2d 182].) The mere fact plaintiff disagrees with the methodology employed by defendant to measure the project's potential traffic impacts on Santiago Canyon Road does not require invalidation of the SEIR/EIR, if it provides accurate information.

### 7. The SEIR/EIR's Alternatives Analysis

#### a. Background

Chapter 4 of the SEIR/EIR lists 13 project objectives and discusses nine project alternatives, three of which involve variations on the no project alternative. The report eliminates the following three alternative proposals without detailed analysis, explaining in a couple of paragraphs why each one was infeasible: (a) Alternative 4 (integrate commercial/retail center into EOPC2); (b) Alternative 5 (include high school site in EOPC1); and (c) Alternative 6 (eliminate golf course, lodge, and marina from EOPC2).

The SEIR/EIR conducts a detailed analysis of the following six alternatives: (a) Alternative 1A (no project/no build alternative); (b) Alternative 1B.1 (no project/development under existing county general plan/zoning designations); (c) Alternative 1B.2 (no project/development according to defendant's 1989 preannexation plans); (d) Alternative 2 (mixed use alternative allowing commercial development in EOPC2); (e) Alternative 3 (reduced density alternative eliminating development of EOPC3); and (f) Alternative 7 (increased residential density in SH2PC and EOPC1, with elimination of development in EOPC2 and 3).

#### b. Discussion

Plaintiff claims the SEIR/EIR fails to either evaluate a reasonable range of potentially feasible and environmentally advantageous project alternatives or provide an in-depth review of the alternatives it did identify. Defendant disputes these contentions. As explained above, we decline to consider plaintiff's failure to exhaust administrative remedies arguments which are mentioned only in footnotes. However, neither of plaintiff's assertions withstands analysis.

To assist in "identify[ing] ways to mitigate or avoid the significant effects that a project may have on the environment" (Cal. Code Regs., tit. 14, § 15126.6, subd. (b)), "[a]n EIR shall describe a range of reasonable alternatives to the project, or to the location of the project, which would feasibly attain most of the basic objectives of the project but would avoid or substantially lessen any of the significant effects of the project, and evaluate

the comparative merits of the alternatives. An EIR need not consider every conceivable alternative to a project. Rather it must consider a reasonable range of potentially feasible alternatives that will foster informed decision-making and public participation. An EIR is not required to consider alternatives which are infeasible. The lead agency is responsible for selecting a range of project alternatives for examination and must publicly disclose its reasoning for selecting those alternatives." (Cal. Code Regs., tit. 14, § 15126.6, subd. (a).)

In reviewing an EIR's consideration of project alternatives, courts employ " 'a rule of reason.' [Citations.]" (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 565 [276 Cal.Rptr. 410, 801 P.2d 1161]; see also Cal. Code Regs., tit. 14, § 15126.6, subd. (f).) "CEQA establishes no categorical legal imperative as to the scope of alternatives to be analyzed in an EIR," and "[e]ach case must be evaluated on its facts, which in turn must be reviewed in light of the statutory purpose." (*Citizens of Goleta Valley v. Board of Supervisors, supra*, 52 Cal.3d at p. 566.) The adequacy of an EIR's alternatives analysis is also governed by a rule of reason. (*Foundation for San Francisco's Architectural Heritage v. City and County of San Francisco* (1980) 106 Cal.App.3d 893, 910 [165 Cal.Rptr. 401].) "It must contain 'sufficient information about each alternative to allow meaningful evaluation, analysis, and comparison with the proposed project.' [Citation.]" (*Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1400 [133 Cal.Rptr.2d 718], quoting Cal. Code Regs., tit. 14, § 15126.6, subd. (d).) In summary, an EIR "must explain in meaningful detail . . . a range of alternatives to the proposed project and, if [the agency] finds them to be infeasible, the reasons and facts that [the agency] claims support its conclusion." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 406 [253 Cal.Rptr. 426, 764 P.2d 278].)

Plaintiff attacks the range of alternatives considered in the SEIR/EIR by identifying the aspects of each one that rendered it environmentally disadvantageous and then concludes "[i]n the end, then, the draft SEIR/EIR disclosed for in-depth review only one alternative with substantial environmental advantages over the project." The apparent premise for this approach is plaintiff's assumption that an alternative which is "superior only in some respects to the project" cannot satisfy the alternatives analysis reasonable range requirement. This is incorrect.

For a project of the scope and complexity of this one it is practically impossible to imagine an alternative that would provide substantial environmental advantages in all respects. Furthermore, section 15126.6 of the CEQA Guidelines supports defendant's approach. Subdivision (a) declares "[a]n EIR shall describe a range of reasonable alternatives to the project . . . which

would feasibly attain most of the basic objectives of the project but would *avoid or substantially lessen any of the significant effects of the project . . . ."* (Cal. Code Regs., tit. 14, § 15126.6, subd. (a), italics added.) The phrase "avoid or substantially lessen any of the significant effects of the project" is repeated in other subdivisions of section 15126.6. (Cal. Code Regs., tit. 14, § 15126.6, subd. (f); see *id.*, subds. (b), (c).) In addition, subdivision (d) provides that, "If an alternative would cause one or more significant effects in addition to those that would be caused by the project as proposed, the significant effects of the alternative shall be discussed . . . ." (Cal. Code Regs., tit. 14, § 15126.6, subd. (d).)

■ Plaintiff also argues "[t]he draft SEIR/EIR . . . failed to evaluate in-depth . . . the obvious alternative of a project consisting of no development in EOPC2 & 3 . . . ." But an alternative considering this scenario was included in the final SEIR/EIR as alternative 7 as a response to the public comments. Plaintiff argues the "timing" of alternative 7's inclusion and consideration "improperly precluded public review, comment and responses to comments." Not so. "The inclusion of new material in a final EIR is not fatal, since the final version must respond to comments on the draft EIR, with the result that 'the final EIR will almost always contain information not included in the draft EIR.' [Citation.] What matters is whether 'significant new information' is added after the public comment period closes." (*Defend the Bay v. City of Irvine, supra,* 119 Cal.App.4th at p. 1273.) Here, the final EIR was issued in advance of the public hearings on the SEIR/EIR and the project.

■ Plaintiff's alternative claim that the SEIR/EIR failed to conduct "an *in-depth* review" of the alternative also lacks merit. Its opening brief asserts "[t]he SEIR/EIR uses a checkbox matrix and conclusory one- or two-sentence bullet point paragraphs purporting to compare alternatives selected for in-depth review with the project." First, the use of the matrix is expressly authorized by the CEQA Guidelines. (Cal. Code Regs., tit. 14, § 15126.6, subd. (d) ["A matrix displaying the major characteristics and significant environmental effects of each alternative may be used to summarize the comparison."].)

■ Second, plaintiff's argument again misstates the contents of the administrative record. Section 4.3 of the SEIR/EIR contains subheadings for each proposed alternative followed by a two-paragraph explanation of that alternative. In section 4.4, the report discusses the three alternatives eliminated from the detail analysis, again providing a two-paragraph summary explaining why each one was found to be infeasible. Finally, section 4.5 provides a detailed discussion of the remaining alternatives that includes not only a matrix summarizing the impacts of each alternative on the issues of

environmental concern, but, under separate subheadings, a discussion of each alternative. While an EIR must "include sufficient information about each alternative to allow meaningful evaluation, analysis, and comparison with the proposed project" (Cal. Code Regs., tit. 14, § 15126.6, subd. (d)), contrary to the suggestion in plaintiff's opening brief, "[t]he discussion of alternatives need not be exhaustive . . . ." (*Foundation for San Francisco's Architectural Heritage v. City and County of San Francisco, supra,* 106 Cal.App.3d at p. 910.) The SEIR/EIR's discussion of project alternatives may not be perfect, but it is sufficient.

## 8. *The Request for Judicial Notice*

Plaintiff requests we take judicial notice of (1) the Growth Management element of Orange County's general plan, and (2) *'Ilio'ulaokalani Coalition v. Rumsfeld* (9th Cir. 2006) 464 F.3d 1083, an opinion discussing the exhaustion of remedies doctrine under the federal National Environmental Policy Act of 1969 (42 U.S.C. § 4321 et seq.).

We deny the request for judicial notice. As plaintiff concedes, "[t]he relevant text" of the county's growth management element appears in the administrative record, in defendant's brief, and in an earlier published decision of this court (*Endangered Habitats League, Inc. v. County of Orange, supra,* 131 Cal.App.4th at pp. 782–783). But, other than asserting "courts routinely take judicial notice . . . of a local government's general plan," plaintiff presents no explanation why we need a fourth version of the same document.

Nor is it necessary for us to take judicial notice of the Ninth Circuit opinion. The exhaustion of administrative remedies requirement in CEQA actions is established by statute. (§ 21177.) *'Ilio'ulaokalani Coalition* involved federal law, not CEQA. Thus, it is of little assistance in this case.

## 9. *The Motion to Strike Portions of Appellant's Reply Brief*

██ Irvine requests we strike four portions of the reply brief, contending it "raise[s] new arguments not previously advanced in this litigation." Plaintiff opposes the motion, denying the claim. The motion is denied. Even assuming Irvine's new issue claims are correct, it is now well settled, "we need not [and do not] consider new issues raised for the first time in a reply brief in the absence of good cause . . . ." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214 [52 Cal.Rptr.3d 744].)

## DISPOSITION

The judgment is affirmed. Appellant's request for judicial notice is denied. Real parties in interest's motion to strike portions of the appellant's reply brief is denied. Respondents shall recover their costs on appeal.

Bedsworth, J., and Ikola, J., concurred.

A petition for a rehearing was denied May 30, 2008, and appellant's petition for review by the Supreme Court was denied July 16, 2008, S164252.