[No. C059227. Third Dist. Aug. 27, 2009.]

TRACY FIRST, Plaintiff and Appellant, v.
CITY OF TRACY, Defendant and Respondent;
WINCO FOODS, Real Party in Interest and Appellant.

COUNSEL

Herum Crabtree Brown, Herum Crabtree, Steven A. Herum, Brett S. Jolley, Kerri K. Foote and Natalie M. Weber for Plaintiff and Appellant.

Cox, Castle & Nicholson, Andrew B. Sabey and Sarah E. Owsowitz for Real Party in Interest and Appellant.

Debra E. Corbett and Daniel G. Sodergren, City Attorneys; Jarvis, Fay & Doporto, Rick W. Jarvis and Andrea J. Saltzman for Defendant and Respondent.

OPINION

NICHOLSON, J.—The City of Tracy (City) prepared an environmental impact report (EIR) with respect to a proposed specific plan amendment and a conditional use permit to build a 95,900-square-foot WinCo Foods store. After considering the EIR and public comments, the city council certified the EIR and approved the project. Tracy First filed a petition for writ of mandate in the trial court against the City challenging the certification of the EIR and approval of the project, with WinCo Foods as the real party in interest. The trial court denied the petition, and Tracy First appeals.

On appeal, Tracy First contends that the City abused its discretion by certifying the EIR. The EIR was considered by the planning commission, which recommended certification of the EIR. However, the city council directed staff to amend the EIR by adding additional information. The city council then certified the EIR, as amended, without sending it back for the

planning commission to consider the amendment. Tracy First argues that the City failed to proceed in the manner required by law when the city council certified the amended EIR without obtaining the planning commission's recommendation concerning the amendment. We conclude that the relevant statutes and rules did not require the city council to obtain renewed planning commission review before certifying the amended EIR. We also conclude that Tracy First's remaining contentions are without merit and therefore affirm.

In a protective cross-appeal, WinCo Foods contends that the trial court (1) abused its discretion by denying WinCo Foods's motion for discovery concerning Tracy First's standing and (2) abused its discretion by ruling that Tracy First has standing. WinCo Foods seeks reversal of the order denying its discovery motion if we reverse the order denying the petition. Because we affirm the order denying Tracy First's petition, we do not consider the contentions made in WinCo Foods's protective cross-appeal. (See *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 280, fn. 19 [62 Cal.Rptr.3d 665] [no need to consider arguments in protective cross-appeal when affirming].)[1]

## FACTUAL BACKGROUND

### A. *Project Application and Initial Study*

In 2003, the owners of property near Interstate 205 in the City submitted an application to change the designation on the property from industrial to commercial in the City's general plan and in the specific plan for the Interstate 205 corridor. The area around the property had earlier been designated for commercial uses as the area grew into a prominent regional retail center, drawing customers from a wide area. At the time of the application, no specific use was proposed for the property. City staff prepared an initial study, recommending approval of the application, and referred it to the planning commission. City staff concluded that it was unnecessary to prepare an EIR because one had been prepared in 1990 when the land was zoned industrial and the change to commercial was consistent with that EIR.

### B. *2003 Planning Commission Review*

The City's planning commission considered the application in a public hearing. Counsel for Tracy First objected that further environmental review was required for the rezoning because it was a project under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). The planning commission voted to recommend to the city council that the general plan and specific plan be amended to rezone the property commercial.

---

[1] WinCo Foods filed a respondent's brief, and the City joined in WinCo Foods's brief.

Before the planning commission recommendation could be taken up by the city council, an application for a WinCo Foods grocery store was submitted as to the southern part of the property under consideration for rezoning. The City decided to prepare an EIR for the rezoning.

C. *Environmental Impact Report*

In October 2005, the City circulated a draft EIR for public comment. It covered three components: (1) a general plan amendment, (2) a specific plan amendment, and (3) construction of the WinCo Foods store. For the purposes of the draft EIR, the property was broken into two parcels: the southern parcel, where the WinCo Foods store would be built; and the northern parcel, which had no specific building planned. The draft EIR was intended to inform city officials and the public concerning the environmental effect of rezoning the southern and northern parcels for commercial use and of building a WinCo Foods store on the southern parcel. It stated: "At this time, no specific development is proposed for the Northern Parcel. However, this EIR evaluates the impacts of a hypothetical 141,130 square-foot commercial development, which would be allowed under the proposed General Plan and Specific Plan designations."

To some extent, the draft EIR considered impacts of the hypothetical northern parcel development. For example, the draft EIR considered the hypothetical northern parcel development with respect to fire department services, traffic impacts, water service, geological risks, and wildlife. The draft EIR, however, did not cover aspects of the northern parcel that could not be known without a specific project in mind, such as aesthetics.

The draft EIR identified two types of unavoidable significant impacts on the environment: air quality and traffic. And the EIR discussed four alternatives to the project. The alternatives included (1) no project, (2) an industrial project, with no commercial component, (3) an increase in the size of the WinCo Foods store, and (4) a decrease in the size of the parking lot for the WinCo Foods store.

Tracy First did not comment on the draft EIR. However, some of the people who submitted comments identified themselves as supporters of Tracy First.

After the close of the public comment period, the City prepared a final EIR to submit to the planning commission.

D. *2006 Planning Commission and City Council Review*

In May 2006, the planning commission held a public hearing on the EIR. At the hearing, city staff recommended certification of the EIR and approval

of the general and specific plan amendments and a conditional use permit for the construction of the WinCo Foods store.

After receiving comments from the public, the planning commission approved the conditional use permit. It recommended that the city council certify the EIR and amend the general and specific plans.

On behalf of Tracy First, Taylor Vo sent a letter to the City appealing the planning commission's approval of the conditional use permit. Vo also purported to appeal the certification of the EIR, but the planning commission did not certify the EIR. Instead, it only recommended that the city council certify the EIR.

In June 2006, the city council held a hearing to consider the appeal and the planning commission's recommendations. Counsel for Tracy First presented several objections to the EIR and the project, including (1) store closures and urban decay, (2) air quality impacts, and (3) energy impacts. Concerning Tracy First's identity, counsel said that Tracy First was composed of business owners and merchants, primarily from the downtown Tracy area. Counsel for Tracy First also submitted 152 pages of written comments and exhibits concerning the EIR and project approval.

After the close of the public comment part of the hearing, the city council decided to obtain further information on the environmental impacts before taking action. The council directed city staff to provide further information and voted to continue consideration of the EIR and the project to a later date. Subsequently, the city council approved $55,022 to prepare an amendment to the EIR.

E. *Amendment to Environmental Impact Report*

In December 2006, the City issued an amendment to the EIR. The amendment covered (1) land use and economics (urban decay), (2) traffic impacts, (3) air quality impacts, and (4) energy conservation. The amendment stated: "Although this new information did not result in new significant impacts, the analyses leading to these conclusions were not included in the [draft EIR. The] City has decided to recirculate the [draft EIR]."

The amendment noted a change in the circumstances under consideration. A new general plan had been adopted and the area of the project had been rezoned from industrial to commercial. Therefore, only the approval of the specific plan amendment, the certification of the EIR, and the conditional use permit to build the WinCo Foods store on the southern parcel were still under

consideration. The amendment also noted that an application to build an office project on the northern parcel had been submitted, but the application was not yet complete.

The City circulated the EIR, as amended, for public comment. Tracy First did not submit a comment during the comment period.

### F. 2007 City Council Review

In April 2007, the city council held a hearing on the issue of whether to certify the EIR, as amended, and approve the specific plan amendment and the conditional use permit. After a city staff report, the council heard public comments, including comments from counsel for Tracy First. During the public hearing, Tracy First also hand delivered a 15-page letter, plus 116 pages of exhibits concerning the amended EIR. After the close of the public comment part of the hearing and further discussion among the council members, the city council voted to certify the amended EIR and approve the specific plan amendment and conditional use permit.[2]

### G. Trial Court Proceedings

Tracy First filed a petition for writ of mandate in the trial court. The petition sought an order directing the City to set aside its certification of the EIR and approval of the project application. Tracy First also filed two requests for judicial notice.

WinCo Foods filed a motion for leave to conduct discovery concerning the involvement of Save Mart Supermarkets in Tracy First and Tracy First's standing to sue under CEQA to challenge the City's certification of the EIR and approval of the project application. The trial court denied the motion for leave to conduct discovery.

After a hearing on the petition for writ of mandate, the trial court denied both the petition and the requests for judicial notice. The court awarded to the City and WinCo Foods the costs of suit and costs associated with preparation of the administrative record. Tracy First appeals, contending that the certification of the EIR and approval of the project application must be set aside. It does not contend that the denial of the requests for judicial notice was error.

---

[2] Although the issues before the city council, other than the certification of the EIR, included approval of the specific plan amendment and the conditional use permit, we refer to the plan amendment and conditional use permit, collectively, as approval of the project application, unless more specificity is required.

## STANDARD OF REVIEW

" 'Section 21168.5 [of the Public Resources Code] provides that a court's inquiry in an action to set aside an agency's decision under CEQA "shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." As a result of this standard, "The court does not pass upon the correctness of the EIR's environmental conclusions, but only upon its sufficiency as an informative document." [Citation.]' [Citations.] 'We may not set aside an agency's approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable.' [Citation.]

" 'An appellate court's review of the administrative record for legal error and substantial evidence in a CEQA case, as in other mandamus cases, is the same as the trial court's: The appellate court reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo.' [Citation.]" (*In re Bay-Delta etc.* (2008) 43 Cal.4th 1143, 1161–1162 [77 Cal.Rptr.3d 578, 184 P.3d 709].)

## DISCUSSION

## I

### *Planning Commission Review*

Tracy First contends that the city council's certification of the EIR and approval of the project application must be set aside because the city council did not obtain the planning commission's review of the amended EIR before the council certified it and approved the project application. Tracy First asserts that the approval of the project application without sending it back to the planning commission with the amended EIR was an abuse of discretion because the city council did not proceed in the manner required by law. We conclude that the CEQA guidelines and the City's municipal ordinances did not require the planning commission to review the EIR, as amended, and make a new recommendation to the city council before the city council could act.

### A. *CEQA Guidelines and Tracy Municipal Ordinances*

"Where an advisory body such as a planning commission is required to make a recommendation on a project to the decisionmaking body, the

advisory body shall also review and consider the EIR or negative declaration in draft or final form." (Cal. Code Regs., tit. 14, § 15025, subd. (c).)[3]

During the time relevant to these proceedings, the City's municipal ordinances had the effect of designating the planning commission as an advisory body on matters of zoning and land use. For example, when an amendment to a specific plan was proposed, the planning commission reviewed it first and passed on a recommendation to the city council. (Tracy Municipal Code, former § 10.20.170.)

"The Planning Commission and City Council shall hold separate and independent public hearings on the proposed adoption or amendment of a Specific Plan. . . ." (Tracy Municipal Code, former § 10.20.170(a).) "The Planning Commission shall review all proposed Specific Plans or any amendments to adopted Specific Plans. Upon the close of the required public hearing, the Commission shall act by resolution to adopt, reject or modify the proposed Specific Plan and forward its recommendation and findings to the City Council for action." (Tracy Municipal Code, former § 10.20.170(b).)

Therefore, because the City's municipal ordinances required the planning commission to review zoning decisions and make a recommendation to the city council before the city council could act, the CEQA guidelines required the planning commission to "review and consider the EIR . . . in draft or final form." (CEQA Guidelines, § 15025, subd. (c).) The question presented here is whether the City complied with this guideline when it based its approval of the project on the amended EIR, even though the planning commission did not have the amendments to the EIR when the planning commission made its recommendation to the city council.

## B.  *Background and Significance of City Council Action*

There is no dispute that the planning commission reviewed the original EIR when it approved the conditional use permit and sent its recommendations to the city council. When the city council considered the planning commission's recommendations and Tracy First's appeal, the city council determined that it wanted additional environmental information not in the original EIR. It therefore asked city staff to supply the additional information and eventually provided funding for an amendment to the EIR.

The amendment to the EIR included modified sections on land use and economics (urban decay), traffic and circulation, and air quality and added a

---

[3] Hereafter, we refer to the CEQA guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.) in the format CEQA Guidelines section _____.

new section on energy conservation. Concerning the use of the amendment, it stated: "This Amendment to the WinCo [draft EIR], in combination with the previous [draft EIR] issued on October 12, 2005, constitutes the Draft CEQA document for the proposed WinCo grocery store project." The City circulated the amended EIR for public comment.

Although there were several changes to the EIR, there was no change to the proposed project.

The parties dispute whether this procedure was, in effect, (1) a granting of Tracy First's appeal of the planning commission decision and a denial of the project application or (2) a continuance of the hearing to obtain further information before acting on Tracy First's appeal and the project application. The record supports WinCo Foods's argument that the procedure was a continuance of the proceeding, not a denial of the project application.

The city council minutes reflect that, at the end of the June 2006 city council hearing on the project, the mayor pro tem moved to "continue consideration of the application," and a council member seconded the motion. A voice vote was taken, and the motion passed unanimously.

Despite this clear evidence that the city council continued consideration of the project, rather than granting Tracy First's appeal and denying the application, Tracy First argues that the city council "effectively granted" the appeal and denied the application. In support of this argument, Tracy First cites comments made by council members during the June 2006 city council meeting, such as "we need to send this EIR back," "I . . . would like to see some additional [information]," and "[t]here are a number of issues apparently that the Council feels have been inadequately addressed in the EIR that is presented to us tonight." Tracy First concludes that these comments, along with the amendments made to the EIR before it was certified, compel a conclusion that the city council granted Tracy First's appeal and denied the project application.

We disagree. Tracy First provides no authority, and we know of none, supporting its position. The city council's continuance and the City's preparation of an amendment to the EIR before the city council ultimately certified the EIR and granted the project application did not amount to granting Tracy First's appeal and denying the project application. It was nothing more than a continuance, before the city council eventually acted on the appeal and project application.

C. *Analysis*

The planning commission considered the October 2005 draft of the EIR when it approved the conditional use permit and recommended approval of

the land use amendments and certification of the EIR. The city council did not grant Tracy First's appeal of the conditional use permit approval, nor did the city council deny WinCo Foods's project application. We further conclude that the city council was not required to remand the matter to the planning commission when the City amended the EIR because (1) although the final EIR considered by the city council in approving the project may have been a different draft, it was not a different EIR, and (2) there is no express requirement that the project application be remanded to the planning commission when the City amends the EIR before it is certified by the city council and used in granting the project application.

### 1. *Draft EIR's*

As noted, the CEQA guidelines require the planning commission to review and consider the EIR "in draft or final form" before making its recommendation to the city council. (CEQA Guidelines, § 15025, subd. (c).) Here, the EIR considered by the planning commission was a draft of the EIR ultimately used by the city council when it granted the project application.

Tracy First points out that the amendment to the EIR stated that the combination of the amendment and EIR constituted the "the Draft CEQA document for the proposed WinCo grocery store project." However, this language does not mean that the draft reviewed and considered by the planning commission was not also a "draft" of the EIR. Indeed, it was an earlier version of what eventually became the EIR certified by the city council. Thus, the planning commission reviewed and considered the EIR "in draft or final form" before making its recommendation to the city council. (CEQA Guidelines, § 15025, subd. (c).)

### 2. *No Express Remand Requirement*

While there are statutes requiring remand to the planning commission when changes are made to proposed projects, there is no statute or guideline requiring the city council to remand the project application to the planning commission when amendments are made to the EIR but not to the project.

■ When the city council wishes to make substantial changes to a project, it may be necessary to send the changes back to the planning commission for its review and recommendation. For example, when a city council acts on a general plan amendment "any substantial modification proposed by the [city council] not previously considered by the commission during its hearings, shall first be referred to the planning commission for its recommendation." (Gov. Code, § 65356.) The same is true of substantial modifications to specific plan amendments and zoning changes. (Gov. Code, §§ 65453, 65857.)

█ However, what occurred here was not a modification of the project—of the specific plan amendment or the conditional use permit—it was a modification of the EIR, the informational report used by the city council in making its decision. The difference between modifying a project and modifying the EIR is substantial. A modification in the project application effects changes in the ultimate land use, while a modification of the EIR does not change the end result sought by the project application.

The Government Code explicitly requires a remand to the planning commission when there are substantial modifications in general plan amendments, specific plan amendments, and zoning changes. However, neither the Government Code, the Public Resources Code, nor the CEQA guidelines explicitly require a remand to the planning commission when modifications are made to the EIR. This absence of a remand requirement for modifications to the EIR, in light of explicit requirements for remand for modifications to the land use application, leads us to conclude that the Legislature and the drafters of the CEQA guidelines did not intend to require a remand to the planning commission when modifications are made to the EIR at the city council level of consideration. Had it so intended, it would have expressly required it.

█ We conclude that the planning commission properly reviewed and considered the EIR in draft form before making its recommendations to the city council, thus satisfying the requirements of CEQA Guidelines section 15025. There was no requirement that the city council remand consideration of the project to the planning commission after amending the EIR. Therefore, the City did not fail to proceed in a manner required by law. (Pub. Resources Code, § 21168.5.)

II

*Reasonable Range of Alternatives*

█ "The purpose of an EIR is to give the public and government agencies the information needed to make informed decisions, thus protecting ' "not only the environment but also informed self-government." ' [Citation.] The EIR is the heart of CEQA, and the mitigation and alternatives discussion forms the core of the EIR. [Citation.] [¶] . . . CEQA requires that an EIR, in addition to analyzing the environmental effects of a proposed project, also consider and analyze project alternatives that would reduce adverse environmental impacts. [Citations.] The CEQA Guidelines state that an EIR must 'describe a range of reasonable alternatives to the project . . . which would feasibly attain most of the basic objectives of the project but would avoid or substantially lessen any of the significant effects of the project . . . .' [Citations.] An EIR need not consider every conceivable alternative to a

project or alternatives that are infeasible. [Citations.]" (*In re Bay-Delta etc., supra*, 43 Cal.4th at pp. 1162–1163; see CEQA Guidelines, § 15126.6, subd. (a).)

Tracy First contends that the EIR (1) included alternatives that did not reduce the environmental impacts and (2) omitted a reduced-store-size alternative. Therefore, submits Tracy First, the city council failed to proceed as required by law. We conclude that Tracy First failed to exhaust its administrative remedies on the first issue (alternatives not reducing impacts) and that Tracy First's argument fails on the merits on the second issue (reduced-size alternative).

### A. *Exhaustion of Administrative Remedies*

█ A party cannot maintain an action alleging that the EIR does not comply with the environmental quality division of the Public Resources Code "unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." (Pub. Resources Code, § 21177, subd. (a).) " '[T]he objections must be sufficiently specific so that the agency has the opportunity to evaluate and respond to them.' [Citation.]" (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 909 [69 Cal.Rptr.3d 105] (*Porterville Citizens*).)

"The petitioner bears the burden of demonstrating that the issues raised in the judicial proceeding were first raised at the administrative level. [Citation.]" (*Porterville Citizens, supra*, 157 Cal.App.4th at p. 909.)

During the administrative proceedings, the issue concerning a reduced store size was raised twice. Both objections were contained in letters hand delivered to the city council during the meeting in April 2007 in which the city council certified the EIR and approved the project application.

First, Jim Watt hand delivered an eight-page letter, plus 19 pages of exhibits, to the city council. The letter focused on the market impact analysis in the EIR. Toward the end of the letter, Watts included a section entitled "OTHER ISSUES." Within this section, Watts stated: "Given the magnitude of the impacts flowing from this project, why hasn't the EIR consultant also analyzed a reduced size alternative for the WinCo? This seems extremely obvious for these reasons: 1) WinCo operates smaller stores in other communities, and, in my professional opinion, can therefore operate successfully in a smaller store ([i]n California, until two years ago, WinCo operated a very

successful store in Redding of approximately 60,000 sq. ft.); and 2) theoretically, a smaller store would have fewer impacts on existing grocery retailers." Watts did not include any evidence that the smaller store in Redding was successful or why the Redding store was no longer operating.[4]

And second, counsel for Tracy First also hand delivered written comments, which included a 15-page letter, plus 116 pages of exhibits concerning the amended EIR. In the letter, Tracy First included a section asserting that the EIR did not provide a reasonable range of alternatives to the proposed project because there was no reduced-size alternative included in the EIR.

On appeal, Tracy First makes two contentions with respect to the range of alternatives discussed in the EIR: (1) the alternatives listed in the EIR were flawed and (2) the EIR failed to consider a reduced-size alternative. Only the latter argument was raised in the administrative proceedings.

Tracy First argues that the alternatives listed in the EIR were flawed because, with the exception of the no-project alternative, they did not avoid or lessen any of the significant environmental impacts of the project. This argument was not raised in the administrative proceedings. Therefore, Tracy First failed to exhaust its administrative remedies with respect to this specific argument and cannot raise it now.[5] (See *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 535 [78 Cal.Rptr.3d 1] [requiring specific objection to preserve issue for judicial review].)

On the other hand, both Tracy First and Jim Watt raised the issue of a reduced-size alternative in written comments to the city council, which were

---

[4] In WinCo Foods's respondent's and opening brief it states: "Ironically, had Tracy First alerted the City and WinCo to this misinformed contention [concerning the smaller store in Redding], WinCo could have set the record straight: that Redding store does not exist today. When it opened at 60,000 square feet the store drew the same number of customers as would typically come to a 90,000 plus square foot WinCo Store, and the small store could not comfortably handle that capacity. WinCo closed the store and opened a new 90,000 plus square foot store on a nearby site. WinCo's experience in Redding demonstrates a constant in the operation of WinCo stores: a reduced size WinCo store generates the same level of traffic as a standard-sized WinCo." (Record citations omitted.)

WinCo Foods's only citations to the record for these statements are to identical statements made in its briefing in the trial court, not during the administrative proceedings. Therefore, WinCo Foods does not cite to evidence supporting the factual assertions. On the other hand, however, neither does Tracy First cite to evidence that the smaller store, which according to Jim Watt's letter to the city council is now closed, was a viable alternative to the larger store proposed.

[5] During the administrative proceedings, counsel for WinCo Foods stated that "[t]he range of alternatives seems inadequate and open to challenge." Tracy First cites this statement as if it were persuasive. For the purpose of reviewing the city council's certification of the EIR and approval of the project, this statement has no weight. We review what the city council did, not what counsel for WinCo Foods said about it.

submitted before the close of the public hearing on the EIR. Therefore, Tracy First exhausted its administrative remedies concerning the reduced-size alternative.

While acknowledging that the reduced-size alternative was raised in the written comments, WinCo Foods urges us to find that the manner in which it was raised did not give the City the opportunity to evaluate and respond to it and was therefore inadequate. The law, however, does not support WinCo Foods's position.

■ "[I]f a public hearing is conducted on project approval, then new environmental objections could be made until close of this hearing. [Citations.] If the decisionmaking body elects to certify the EIR without considering comments made at this public hearing, it does so at its own risk. If a CEQA action is subsequently brought, the EIR may be found to be deficient on grounds that were raised at any point prior to close of the hearing on project approval."[6] (*Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1201 [22 Cal.Rptr.3d 203].)

The city council voted on the certification and approval during the same hearing at which the written comments were submitted. Although it appears the city council did not actually consider the reduced-size-alternative arguments, that does not prevent Tracy First from raising the issue on appeal.

B.  *Analysis of Reduced-size-alternative Issue*

As noted above, the EIR listed four alternatives to the WinCo Foods store proposal. The alternatives included: (1) no project, (2) an industrial project, with no commercial component, (3) an increase in the size of the WinCo Foods store, and (4) a decrease in the size of the parking lot for the WinCo Foods store.

Tracy First contends that this range of alternatives was insufficient because it did not include a reduced-store-size alternative. The contention is without merit because the record does not establish that a reduced-size alternative would substantially diminish any of the significant environmental impacts of the project. (See CEQA Guidelines, § 15126.6, subd. (a).) Therefore, Tracy First fails to show that the alternatives listed in the EIR did not present a reasonable range.

---

[6] WinCo Foods cites *Sierra Club v. City of Orange, supra*, 163 Cal.App.4th at page 537, for the proposition that comments must be made during the public comment period for the EIR. This citation is unpersuasive because the comment deemed insufficient to exhaust administrative remedies in that case came before the EIR was prepared and, therefore, was not a comment on the EIR. The case did not consider whether comments made after the close of the public comment period for the EIR were timely.

The EIR stated that the size range of WinCo Foods stores is from 65,000 to 96,000 square feet and that the application was for a store at the upper end of that range. The EIR concluded that the two significant impacts of the project would be on the air quality and the traffic. Based on this information from the EIR, Tracy First states: "A reduced size alternative would presumably reduce the significance of the impacts such as traffic and air quality that directly relate to building square footage [citation to record]—as well as reduce potential store closures and energy consumption—which the [EIR] recognizes . . . ."

The range-of-alternatives requirement has to do with diminishing the significant impacts identified in the EIR. (CEQA Guidelines, § 15126.6, subd. (a).) Because air quality and traffic were the only two significant impacts identified in the EIR, we need not consider Tracy First's assertions that a reduced-size alternative would reduce potential store closures and energy consumption.

As to the air quality and traffic, which were identified in the EIR as significant impacts, the record does not support Tracy First's assertion that those impacts would be diminished by building a smaller store. There is no evidence in the record that fewer customers would patronize the WinCo Foods store if the store were smaller. Thus, we can only speculate that traffic would be lighter. And Tracy First offers only its "presumption" that air quality would be improved over the project as planned, but we have no way of knowing whether that is true or, if it is true, how significant that improvement would be.

In making its contention that the range of alternatives was insufficient because it did not include a reduced-size alternative, Tracy First relies, primarily, on *Preservation Action Council v. City of San Jose* (2006) 141 Cal.App.4th 1336 [46 Cal.Rptr.3d 902] (*Preservation Action Council*).

In *Preservation Action Council*, the city considered an EIR for a project to build a Lowe's store. The significant environmental impact of the project would be to demolish a historic building. The EIR included an alternative that would have allowed the building of the Lowe's, although at a reduced size, without demolishing the historic building. The EIR rejected this alternative but did not include evidence that the reduced-size alternative was infeasible. (*Preservation Action Council, supra*, 141 Cal.App.4th at pp. 1352–1358.) The Court of Appeal concluded: "Neither the [final EIR] nor the administrative record contains any meaningful detail or independent analysis of the validity of Lowe's claim that the reduced-size alternative is infeasible, and the City Council made no specific finding validating that claim. On this record, the trial court correctly held that the City's rejection of the reduced-size Lowe's alternative cannot be upheld." (*Id.* at p. 1357.)

Tracy First's reliance on *Preservation Action Council* is misplaced. In that case, the reduced-size alternative would have saved the historic building, thus eliminating the adverse environmental impact. Here, there is no such clear-cut reason to require a reduced-size alternative—that is, no evidence that it would substantially mitigate the significant environmental impacts. The city council acted reasonably in certifying the EIR with the listed alternatives.

III

*Energy Impacts*

■ An EIR must include a statement concerning "[m]itigation measures proposed to minimize significant effects on the environment, including, but not limited to, measures to reduce the wasteful, inefficient, and unnecessary consumption of energy." (Pub. Resources Code, § 21100, subd. (b)(3).) The CEQA guidelines provide that: "Energy conservation measures, as well as other appropriate mitigation measures, shall be discussed when relevant. Examples of energy conservation measures are provided in Appendix F." (CEQA Guidelines, § 15126.4, subd. (a)(1)(C).) Appendix F of the CEQA guidelines (Appendix F) states: "Potentially significant energy implications of a project should be considered in an EIR. The following list of energy impact possibilities and potential conservation measures is designed to assist in the preparation of an EIR. In many instances specific items may not apply or additional items may be needed." In list form, Appendix F discusses how energy consumption and conservation may be analyzed in the EIR.

Tracy First asserts that the City (1) failed to proceed in a manner required by law because the City (a) did not include the northern parcel in its energy consumption calculations and (b) relied on state building energy efficiency standards in concluding that there would be no significant energy impacts. Tracy First also asserts that (2) the City's conclusion that the project would not have a significant environmental impact with respect to energy is not supported by substantial evidence because (a) an expert's opinion that the energy impact would not be significant was not supported by facts and (b) the City omitted an Appendix F analysis of energy consumption and conservation.

A. *Discussion of Energy Impact in EIR*

The City's EIR discussed energy issues in section 4.13. The section is 17 pages long and includes discussion of the environmental setting, the regulatory framework applicable to energy resources and use, the standards for determining whether the project's energy impact is significant, and a discussion of the energy impact of the project. This discussion of the energy impact

is eight pages long and concludes that no mitigation measures are required because there is no significant energy impact.

The discussion of the energy impact of the project detailed actions to be taken to promote efficiency in energy usage. The EIR noted that, when the project's building plans are submitted for approval, the City would conduct a review of the energy conservation features, such as insulation, energy-efficient heating, ventilation and air-conditioning systems, solar-reflective roofing, energy-efficient indoor and outdoor lighting, heat reclamation from air-conditioning systems to heat water, and skylights. Concerning vehicle use, the EIR noted that the proximity of the project to established retail centers would reduce fuel consumption.

The discussion of the energy impact of the project also discussed the energy issues as they relate to the proposed WinCo Foods store, specifically, to be built on the southern parcel. Using a similar store for comparison, the EIR detailed the energy consumption caused by such a store and cataloged the actions to be taken to make energy consumption efficient. The EIR did not discuss a specific building or buildings for the northern parcel, as no application had been completed for a specific building.

B.   *Analysis of Tracy First's Contentions*

1.   *Proceeding in Manner Required by Law*

a.   *Exclusion of Northern Parcel*

Tracy First contends that the EIR failed to consider the "whole of the action" in the EIR because it did not include the northern parcel in its energy analysis. Therefore, argues Tracy First, the City failed to proceed in the manner required by law. This contention fails because (1) the EIR's energy analysis included the northern parcel, even if the discussion concerning the northern parcel did not contain the same level of specificity as the discussion of the southern parcel, on which a specific project was planned, and (2) the general energy analysis with respect to the northern parcel was sufficient under the circumstances.

■   Under the CEQA guidelines, " 'Project' means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . ." (CEQA Guidelines, § 15378, subd. (a).) The City may not chop the project into smaller units in order to avoid consideration of the entire project. (*Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283–284 [118 Cal.Rptr. 249, 529 P.2d 1017].) An example, cited by

Tracy First, of this prohibited division of a project into separate projects occurred when a shopping center was divided into two parts for separate environmental review. (*Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 167 [217 Cal.Rptr. 893].) In that case, the court stated: "This approach is inconsistent with the mandate of CEQA that a large project shall not·be divided into little ones because such division can improperly submerge the aggregate environmental considerations of the total project. [Citation.]" (172 Cal.App.3d at p. 167.)

Tracy First argues that the City did not proceed in the manner required by law because its energy analysis in the EIR "effectively divided the Project into two parts for the purpose of studying the Project's energy impacts, and omitted nearly 60% of the Project from the energy analysis, severely understating the aggregate energy consumption and resulting impacts." This argument, however, ignores the discussion of the energy conservation measures, listed above, to be taken when a building is planned for the northern parcel. Thus, contrary to Tracy First's argument, the EIR discussed energy issues with respect to the northern parcel.

Unlike the division of the shopping center into two units for environmental review, the EIR here did not divide the project into separate environmental review units. While it is true that the EIR was more specific as to the southern parcel, it could not realistically be required to be more specific as to the northern parcel because no application had been submitted to build on that parcel.

■ The Public Resources Code and the CEQA Guidelines require discussion of "[m]itigation measures proposed to minimize significant effects on the environment" (Pub. Resources Code, § 21100, subd. (b)(3)), "when relevant" (CEQA Guidelines, § 15126.4, subd. (a)(1)(C)). With no specific building or buildings planned for the northern parcel, a more specific discussion of energy impacts and mitigation measures was not yet relevant. Therefore, the City proceeded in the manner required by law when it included a general discussion of energy conservation measures as to the whole project and a more specific discussion of energy impacts and conservation measures with respect to the southern parcel.

b. *California Building Energy Efficiency Standards*

California building standards are contained in title 24 of the California Code of Regulations. (*International Assn. of Plumbing etc. Officials v. California Building Stds. Com.* (1997) 55 Cal.App.4th 245, 248 [64 Cal.Rptr.2d 129].) Included in those standards are the California Building Energy Efficiency Standards. (Cal. Code Regs., tit. 24, pt. 6.) In its discussion

concerning energy conservation, the EIR stated that "the proposed project would exceed the Code required energy efficiency standards detailed in the California 2005 Building Energy Efficiency Standards by more than 25 percent." In other words, the energy efficiency of the project is 25 percent better than what is required by the state standards. Based on this assessment, the EIR concluded: "As a result of the proposed project's compliance to and exceedance of the 2005 California Building Energy Efficiency Standards, direct energy consumption by the proposed project would not result in a significant impact." (Fn. omitted.) The EIR therefore did not propose mitigation measures with respect to energy.

Tracy First makes an argument with respect to the EIR's reliance on the California Building Energy Efficiency Standards that is difficult to comprehend. The heading of the argument states: "Air Quality Mitigation Measures and Title 24 Compliance Do No[t] Cure Omitting the Northern Parcel." In what appears to be the core of this argument, Tracy First states it "explained [to the trial court] that it is impossible to tell if Title 24 requirements mitigate the energy impact to a level of insignificance because the entire Project's energy impacts were never studied. Moreover, [Tracy First] clarified that Title 24 establishes *minimum* mandatory energy efficiency standards applicable to all construction, while CEQA requires additional analysis and mitigation where a project approval may result in inefficient energy consumption or significant energy impacts. Thus, Title 24 compliance does not excuse [the City's] failure to address energy as required by CEQA. Unfortunately, the Trial Court fell prey to the City's assertion that Title 24 compliance preempts CEQA compliance, thereby rendering [Public Resources Code section 21100, subdivision (b)(3)] (requiring an EIR to include a detailed statement setting forth mitigation measures proposed to reduce wasteful, inefficient, and unnecessary energy consumption), [CEQA] Guidelines [section] 15126.4(a), and Appendix F of the CEQA Guidelines mere surplusage." (Citations omitted, original italics.)

█ To the extent that Tracy First may be arguing that, because the EIR did not consider a specific building project with respect to the northern parcel, the energy analysis was insufficient, we reject the argument because, as we discussed above, CEQA does not require analysis of a specific project when no specific project is being planned.

As for Tracy First's argument that it is improper to rely on state building standards in determining whether an energy impact is significant, we disagree. CEQA requires "[m]itigation measures proposed to minimize significant effects on the environment, including, but not limited to, measures to reduce the wasteful, inefficient, and unnecessary consumption of energy." (Pub. Resources Code, § 21100, subd. (b)(3).) The California Building Energy Efficiency Standards are meant to promote energy efficiency, as the

name implies. In other words, they "reduce the wasteful, inefficient, and unnecessary consumption of energy." (§ 21100, subd. (b)(3).) Other than arguing that reliance on the building standards is not enough, Tracy First makes no argument concerning what more the EIR should have done.[7] Accordingly, the City did not fail to proceed in the manner required by law when it relied on the California Building Energy Efficiency Standards in determining that the project would not have a significant energy impact.

### 2. *Substantial Evidence*

Tracy First also contends that the City abused its discretion in certifying the EIR because substantial evidence does not support the EIR's conclusion that the project would not result in wasteful, inefficient, or unnecessary consumption of energy. In support of this contention, Tracy First claims that (a) the conclusions of the City's expert were not supported by facts and (b) the City failed to follow the energy consumption standards of Appendix F. WinCo Foods asserts that Tracy First forfeited this contention by failing to set forth fully the EIR's analysis of energy impacts. We agree that Tracy First forfeited this issue. In any event, Tracy First's contention concerning substantial evidence is without merit.

"We review CEQA decisions to determine if they are supported by substantial evidence in the record as a whole [citation], and whether the agency abused its discretion by failing to proceed in a manner required by law. In this case, as in most, those questions revolve around the EIR. [Citation.] 'An EIR is an informational document which provides detailed information to the public and to responsible officials about significant environmental effects of a proposed project. [Citations.] It must contain substantial evidence on those effects and a reasonable range of alternatives, but the decision whether or not to approve a project is up to the agency. [Citations.]' [Citation.] Review is confined to whether an EIR is sufficient as an informational document. 'The court must uphold an EIR if there is any substantial evidence in the record to support the agency's decision that the EIR is adequate and complies with CEQA. [Citation.] [¶] CEQA requires an EIR to reflect a good faith effort at full disclosure; it does not mandate perfection, nor does it require an analysis to be exhaustive.' [Citation.]

"As with all substantial evidence challenges, an appellant challenging an EIR for insufficient evidence must lay out the evidence favorable to the other side and show why it is lacking. Failure to do so is fatal. A reviewing court will not independently review the record to make up for appellant's failure to

---

[7] This is not a preemption issue, as Tracy First suggests. It is instead a matter of whether the EIR can rely on compliance with state building standards in finding whether there are significant impacts.

carry his burden. [Citation.]" *(Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1265–1266 [15 Cal.Rptr.3d 176].)

Here, Tracy First makes no attempt to set forth fully the facts relating to the City's decision to certify the EIR with respect to the energy analysis. Instead, Tracy First simply makes the bare assertions that the opinion of the City's expert that the project would not result in wasteful, inefficient, and unnecessary consumption of energy was not supported by facts and there was no Appendix F analysis. Thus, Tracy First forfeited its contention that substantial evidence does not support the City's conclusion that the project's energy impacts would not be significant. In any event, the contention is without merit.

### a. *Expert's Opinion*

Tracy First contends that there was insufficient evidence to sustain the EIR's conclusion that the energy impact of the project would not be significant. It bases this contention on the EIR's reliance on an expert who did not analyze the impact of a building project on the northern parcel.[8] Again, we note our conclusion that CEQA does not require the EIR to analyze specific energy impacts when no specific building project is planned. Since that is Tracy First's only objection to the conclusions of the expert, the argument fails to show that there was not sufficient evidence to sustain the EIR's findings with respect to energy.

### b. *Appendix F*

Tracy First contends that "the EIR did not follow to [*sic*] the energy consumption disclosure standards of Appendix F of the CEQA Guidelines." (Fn. omitted.) According to Tracy First, this "disables [WinCo Foods's] claim that substantial evidence supports [the City's] decision." For this proposition, Tracy First provides neither authority nor analysis. Indeed, neither Appendix F, itself, nor any other authority requires that an EIR discuss every possible energy impact or conservation measure listed in Appendix F.

The EIR discussed many of the issues listed in Appendix F. And Tracy First does not identify any particular energy issue listed in Appendix F that

---

[8] Tracy First fails to cite to the expert's opinion in the record. Instead, it merely cites to an argument made in the trial court by the City that the EIR's conclusion concerning an energy impact was supported by expert opinion. To prevail on an argument concerning the sufficiency of the evidence, a party must cite to the relevant evidence, not to arguments about the evidence. (*Defend the Bay v. City of Irvine, supra,* 119 Cal.App.4th at pp. 1265–1266.) For this additional reason, Tracy First forfeited the sufficiency of evidence argument.

the EIR should have, but did not, address. Neither does Tracy First give any reasoning for finding that the EIR did not contain substantial evidence supporting the City's decision with respect to energy consumption and conservation. Therefore, Tracy First has failed to show that the City prejudicially abused its discretion based on lack of substantial evidence.

IV

*Mitigation of Extraterritorial Impacts*

Tracy First contends that the City failed to proceed in the manner required by law because the EIR found that the project would substantially impact two intersections outside the City's jurisdiction, in an unincorporated area, but did not provide for funding of improvement of the intersections. We conclude that the City was not required to provide for funding of the improvements to the intersections because the intersections were not under the control of the City and there was no existing plan for the county to improve the intersections.

A.   *Background*

The traffic study included in the EIR concluded that the project would have a substantial impact on two intersections near the project but outside the City's limits, in an unincorporated part of San Joaquin County. The traffic study recommended improvements, such as installation of traffic signals, coordination of signals with railroad crossing systems, and optimization of signal timing to mitigate the impact.

The county public works department submitted a comment in which it stated that the City should require that a "fair share" payment be made to the county for the work on the intersections.

The EIR noted that the county had a traffic mitigation fee program for the purpose of collecting fees to finance transportation improvements required because of new development. However, the county's program had not identified the intersections identified in the EIR as projects to be funded by the fee program. Based on this information, the EIR concluded: "The County of San Joaquin would be responsible for construction of the intersection improvement. Currently, there is no identified plan or project to implement this improvement, nor is there a financing plan in place to fund the improvements. Therefore, since the mitigation measure cannot be implemented, the impact is *significant and unavoidable*." (Original italics.)

B. *Analysis*

■ A public agency must mitigate or avoid the significant environmental effects of a project that it carries out or approves if it is feasible to do so. (Pub. Resources Code, § 21002.1, subd. (b); *City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 359 [46 Cal.Rptr.3d 355, 138 P.3d 692] (*City of Marina*).) Mitigation measures adopted by the agency must be fully enforceable. "A public agency shall provide that measures to mitigate or avoid significant effects on the environment are fully enforceable through permit conditions, agreements, or other measures. . . ." (Pub. Resources Code, § 21081.6, subd. (b).) "Mitigation measures must be fully enforceable through permit conditions, agreements, or other legally-binding instruments. . . ." (CEQA Guidelines, § 15126.4, subd. (a)(2).) ■ The agency must be able to find, based on substantial evidence, that the adopted mitigation measures are "required or incorporated into the project" and that those measures will "mitigate or avoid significant effects on the environment." (Pub. Resources Code, § 21081.6, subds. (a)(1), (b).)

*City of Marina, supra,* 39 Cal.4th 341 involved a plan for the expansion of a university campus on a former Army base, Fort Ord. The EIR stated that the mitigation of the project's environmental effects would require improvements to Fort Ord's infrastructure outside the campus. (*Id.* at p. 351.) The Fort Ord Reuse Authority (FORA) had established a plan for the future use and development of the base, including infrastructure improvements. (*Id.* at pp. 346–347.) FORA had assumed that the university would pay its share of the cost of infrastructure improvements, but the board of trustees refused to contribute any amount toward the cost of the improvements. (*Id.* at p. 351.) In approving the project, the board found that the improvements were the responsibility of FORA, that mitigation was not feasible because the board was legally prohibited from contributing funds to FORA for that purpose, and that the project offered overriding benefits that outweighed any remaining unmitigated environmental effects. (*Ibid.*)

The *City of Marina* court held that the findings that mitigation was not the board's responsibility and that mitigation was not feasible were based on erroneous legal assumptions. (*City of Marina, supra,* 39 Cal.4th at pp. 355–356.) The court stated that "CEQA requires the Trustees to avoid or mitigate, if feasible, the significant environmental effects of their project (Pub. Resources Code, § 21002.1, subd. (b)) and . . . payments to FORA may represent a feasible form of mitigation." (*City of Marina, supra,* at p. 359.) The court stated that the board's payment should be " ' "roughly proportional" ' " to the effects of the project and that the board "need not pay to mitigate effects caused by other users of the base." (*Id.* at pp. 362, 361.)

The *City of Marina* court stated further that "unavoidable uncertainties affecting the funding and implementation of the infrastructure improvements . . . do not render voluntary contributions to FORA by the Trustees infeasible as a method of mitigating" the environmental effects of the project. (*City of Marina, supra*, 39 Cal.4th at p. 364.) The court stated, " 'Of course a commitment to pay fees without any evidence that mitigation will actually occur is inadequate.' [Citations.]" (*Id.* at p. 365.) The court concluded, however, that there was "no reason to doubt" that FORA would comply with its statutory obligation to prepare Fort Ord for civilian development by constructing the needed infrastructure, and noted that FORA possessed a broad range of fundraising powers to accomplish that task. (*Ibid.*)

Tracy First argues that the EIR should have required payment to the county for the improvements to the intersections, even though the county had no construction or financing plan to make the improvements. In support of this argument, Tracy First cites the holding in *City of Marina* that an EIR must provide for extraterritorial improvements. To the contrary, *City of Marina* focused on the existing plans of FORA to make improvements to the former base. The court observed that FORA had a statutory obligation to make the improvements and that FORA had a plan to make the improvements over a period of several years.

The county had no similar plan to improve the intersections, either in the near term or within several years. Because of this, the holding of *City of Marina*, that " 'a commitment to pay fees without any evidence that mitigation will actually occur is inadequate,' " supports the City's conclusion that the mitigation, though needed, was not feasible. (*City of Marina, supra*, 39 Cal.4th at p. 365.) There was no plan, enforceable by the City, that would ensure that required mitigation funds would actually go toward mitigation. (See Pub. Resources Code, § 21081.6, subd. (b) [requiring that mitigation measures be enforceable].) Accordingly, the EIR appropriately concluded that the impact on the intersections was significant and unavoidable.

Tracy First argues that "the absence of a 'reasonable, enforceable plan' does not lessen a developer's responsibility to mitigate extraterritorial impacts; instead it means a developer must pay the mitigation fee and the public agency must prepare a sufficient plan or program to assure actual mitigation of the impacted intersection." Nothing in the CEQA statutes, guidelines, or cases supports this statement. For this to be true, it would require the City to impose on the county a plan to improve the intersections. Without jurisdiction and without a county plan in place, the City cannot ensure that mitigation measures will be implemented, even if funding is required by the EIR. The City did not fail to proceed in the manner required when it found that the impact on extraterritorial intersections was significant and unavoidable.

## DISPOSITION

The judgment is affirmed. City of Tracy and WinCo Foods are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.

On September 18, 2009, the opinion was modified to read as printed above. The petition of appellant Tracy First for review by the Supreme Court was denied January 21, 2010, S177434.