Filed 2/26/21  Citizens for Positive Growth & Preservation v. City of Sacramento CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITIZENS FOR POSITIVE GROWTH & PRESERVATION, | C090205 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-80002897-CU-WM-GDS) |
| v. | |
| CITY OF SACRAMENTO et al., | |
| Defendants and Respondents. | |

This California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] lawsuit arises from defendant City of Sacramento's adoption of an ordinance removing a three-block area from the Alhambra Corridor Special Planning District (the Alhambra SPD), as part of a far-reaching Central City Specific Plan project (the project).

---

[1]     Undesignated statutory references are to the Public Resources Code.

1

The project originally did not propose to change the boundaries of the Alhambra SPD.  That is because the three-block area at issue here already had been removed from the Alhambra SPD by ordinances enacted in 2016, a year before the Central City project was proposed.

However, after the draft environmental impact report (EIR) was circulated for the project, a writ of mandate (issued in a different proceeding) compelled the City of Sacramento (the City) to rescind the 2016 ordinances, effectively causing the western boundary of the Alhambra SPD to revert to its prior configuration and overlap with the eastern boundary of the newly proposed Central City Special Planning District (Central City SPD).  To address this overlap, the City revised the project to include a new ordinance removing the three-block area from the Alhambra SPD, thereby bringing the description of the project back into conformance with the assumptions in the draft EIR.  The City described this change in its final EIR and concluded that recirculation of the EIR was not required because the draft EIR already analyzed the potential environmental impacts of applying the new Central City SPD policies to the three-block area that formerly was part of the Alhambra SPD.

After the City approved the project, plaintiff Citizens for Positive Growth & Preservation (Citizens) filed a petition for writ of mandate and complaint for declaratory and injunctive relief (petition) seeking to set aside the City's certification of the EIR and related project approvals.  The trial court denied the petition.

Citizens appeals, arguing that the City violated CEQA by modifying the boundaries of the Alhambra SPD without (1) adequately analyzing the environmental impacts of that change, or (2) recirculating the EIR to give the public a meaningful opportunity to review and comment upon it.  We will affirm the judgment.

BACKGROUND FACTS AND PROCEDURE

The City created the Alhambra SPD in 1992.  Its purpose was to "assist in the preservation of the neighborhood scale and character [while] providing additional

2

housing opportunities in the area." To that end, development within the Alhambra SPD became subject to special regulations and standards, including, among other things, a requirement that, with certain exceptions, development within 300 feet of a residential zone not exceed 35 feet in height. The purpose of this "residential preservation transition buffer zone" was to "protect residential neighborhoods from visual intrusion by new development that is out of scale with the adjacent residential neighborhood."

As originally created, the Alhambra SPD included the area bounded by the Southern Pacific railroad levee on the north, Highway 50 on the south, 34th Street on the east, and 26th Street on the west. However, in September 2016, the City adopted ordinances (the 2016 Ordinances) shifting the western border of the Alhambra SPD from 26th Street to 29th Street. The effect of the 2016 Ordinances was to align the boundary of the Alhambra SPD with Interstate Business 80, shrink the size of the Alhambra SPD by approximately three city blocks, and rezone the parcels formerly within the Alhambra SPD to the City's base zoning designations. Claiming this change did not qualify as a "project" under CEQA, the City adopted the 2016 Ordinances without environmental review.

In November 2016, Citizens filed a petition and complaint (the 2016 lawsuit) challenging the City's adoption of the 2016 Ordinances. Citizens argued, among other things, that the City violated CEQA by adopting the 2016 Ordinances without environmental review.

In September 2017, while the 2016 lawsuit was pending, the City circulated for public comment the draft EIR for its new Central City Specific Plan, a land use planning document establishing guidelines and policies for the 4.25-square-mile "core" central city area, which is bounded by the American River/River District/Railyards on the north, the Sacramento River on the west, Broadway on the south, and Interstate Business 80 on the east. Among other things, the Central City Specific Plan established the Central City

SPD, covering most of the central city area, including areas that previously were parts of other special planning districts.

A chief goal in establishing the Central City Specific Plan was to facilitate and encourage "more compact" infill development within the central city by, among other things, expanding allowable heights and densities, especially in areas near transit services. The draft EIR discussed, among other things, how the proposed project would alter maximum building heights for areas within the Central City Specific Plan, including the Central City SPD. The draft EIR disclosed that the proposed project would increase the maximum allowable height in the general commercial (C-2) zone (from 65 to 85 feet), the office business low-rise mixed-use (OB) zone (from 35 to 65 feet), and the residential mixed-use (RMX) zone (from 45 to 65 feet).

Although building height in the Alhambra SPD is limited to 35 feet within 300 feet of residential zones, as noted above, the draft EIR assumed that the three-block area between 26th Street and 29th Street already had been removed from the Alhambra SPD by the 2016 Ordinances. Thus, in analyzing the potential impacts of development that could occur under the proposed project, the draft EIR focused on how the project would increase the maximum allowable heights in the C-2, OB, and RMX *base* zones, without regard to the Alhambra SPD's special height restrictions.

The draft EIR analyzed the environmental impacts of the project by comparing the conditions under full build-out of the Central City Specific Plan, at the maximum allowable heights and densities, against the existing physical conditions in the area affected by the project. The draft EIR identified 13 significant impacts that could not be reduced to less than significant levels with the implementation of mitigation measures. The draft EIR concluded all other potentially significant impacts would be reduced to less than significant levels with the implementation of mitigation measures.

In January 2018, after the close of the public comment period on the draft EIR, the superior court issued its decision in the 2016 lawsuit. The court ruled in favor of

4

Citizens, concluding that the City violated CEQA by adopting the 2016 Ordinances without environmental review.  The court therefore granted the petition (in part) and issued a writ commanding the City to rescind the 2016 Ordinances.**2**

In February 2018, when the City released the final EIR for the Central City Specific Plan, the City discussed the 2016 lawsuit and the effect that the court's invalidation of the 2016 Ordinances would have on the proposed project.  The City explained that the court's decision created an overlap between the boundaries of the Alhambra SPD and the Central City Specific Plan and a potential inconsistency in zoning designations for parcels in the area between 26th Street and 29th Street.  To remedy this, the City proposed a new legislative action to remove the area between 26th Street and 29th Street from the Alhambra SPD.

The City acknowledged that removing the three-block area from the Alhambra SPD could result in taller developments due to increased allowable heights under the Central City Specific Plan zoning designations.  Nevertheless, the City concluded that this change would not affect the environmental analysis of the proposed project because it merely would bring the description of the project into conformance with the assumed conditions in the draft EIR, and therefore would not have any new significant environmental impacts or cause a substantial increase in the severity of any previously identified environmental impacts that were not already analyzed in the draft EIR.

In April 2018, over Citizens' objection, the City certified the final EIR and approved the Central City Specific Plan.  As part of its list of approvals for the project, the City adopted Ordinance No. 2018-0014 (the 2018 Ordinance), amending section 17.420.010 of the Sacramento City Code to remove the area between 26th Street and 29th

---

**2**      In or about March 2018, the City complied with the superior court's writ by rescinding the 2016 Ordinances, temporarily reestablishing the previous western boundary of the Alhambra SPD at 26th Street.

5

Street from the Alhambra SPD.  The City filed a notice of determination for the project on April 20, 2018.

In May 2018, Citizens filed a verified petition for writ of mandate and complaint for declaratory and injunctive relief challenging the certification of the EIR and adoption of the Central City Specific Plan.  Citizens argued that the City violated CEQA by approving the Central City Specific Plan without studying the environmental impacts of removing the area between 26th Street and 29th Street from the Alhambra SPD, and by adding significant new information to the final EIR after the close of the public comment period without revising and recirculating the EIR.

The superior court denied the petition and complaint.  The court concluded Citizens failed to show that the EIR did not adequately analyze the environmental impacts of removing the area between 26th Street and 29th Street from the Alhambra SPD, or that the City was required to revise and recirculate the EIR.  Citizens timely appealed the court's judgment.

DISCUSSION

I

*Standard of Review*

In a mandate proceeding to review an agency's compliance with CEQA, we review the administrative record to determine whether the agency prejudicially abused its discretion.  (*Chico Advocates for a Responsible Economy v. City of Chico* (2019) 40 Cal.App.5th 839, 845 (*Chico Advocates*); § 21168.5.)  An agency may abuse its discretion under CEQA by failing to proceed in the manner required by law or by reaching factual conclusions unsupported by substantial evidence.  (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 435.)  Judicial review of these two types of errors differs significantly.  (*Ibid.*)  Where the claim is predominantly one of improper procedure, we determine de novo whether the

6

agency employed the correct procedures, scrupulously enforcing all legislatively mandated requirements.  (*Ibid.*)

Where the claim is predominantly a dispute over the facts, we must accord deference to the agency's factual conclusions.  (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova, supra*, 40 Cal.4th at p. 435.)  Reviewing courts do not determine whether the EIR's ultimate conclusions are correct, but only whether they are supported by substantial evidence.  (*San Joaquin Raptor Rescue Center v. County of Merced* (2007) 149 Cal.App.4th 645, 653.)  Under CEQA, substantial evidence means "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached."  (Cal. Code Regs., tit. 14, § 15384, subd. (a) [CEQA's regulatory guidelines; hereafter CEQA Guidelines].)  In applying the substantial evidence test, we must indulge all reasonable inferences to support the agency's determination and resolve all conflicts in the evidence in favor of the agency's decision.  (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 393 (*Laurel Heights I*); *Chico Advocates, supra*, 40 Cal.App.5th at p. 845.)  Regardless of what is alleged, an EIR is presumed legally adequate, and the party challenging the EIR has the burden of proving otherwise.  (*Chico Advocates*, at p. 846.)

II

*Adequacy of Impacts Analysis*

Citizens argues the City violated CEQA by voting to approve the project without analyzing the environmental impacts of the project on the three-block area between 26th Street and 29th Street that was removed from the Alhambra SPD.  We disagree.  Those impacts *were* discussed in the EIR, and a change in the special planning district designation does not alter how the significance of environmental impacts should have been analyzed.

The fundamental goal of CEQA is " 'to compel government at all levels to make decisions with environmental consequences in mind.' " (*Laurel Heights I, supra*, 47 Cal.3d at p. 393.) Consistent with this objective, CEQA requires an EIR whenever an agency proposes to approve or carry out a project that may have a significant effect on the environment. (§§ 21080, subd. (d), 21082.2, subd. (d), 21100, 21151; CEQA Guidelines, § 15002, subd. (f)(1).)

The primary purpose of an EIR is to provide public agencies and the public with information about the effects a proposed project is likely to have on the environment. (*Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 447 (*Neighbors for Smart Rail*); § 21061.) The term "environment" means the physical conditions which exist within the area affected by a proposed project. (§ 21060.5.) The "effects" analyzed under CEQA must relate to a physical change in that environment. (CEQA Guidelines, § 15358, subd. (b); accord, *Wal-Mart Stores, Inc. v. City of Turlock* (2006) 138 Cal.App.4th 273, 288, disapproved in part on other grounds as stated in *Hernandez v. City of Hanford* (2007) 41 Cal.4th 279, 297; see also § 21065; CEQA Guidelines, § 15064, subd. (d).) Thus, to evaluate a project's effects on the environment, an EIR must first define the physical environmental conditions, or baseline, against which the project's predicted changes will be compared. (*Neighbors for Smart Rail, supra*, at p. 447; see also *Wal-Mart Stores, supra*, at p. 289 [change is identified by comparing existing physical conditions with the physical conditions reasonably predicted to exist after the project is implemented].)

Because CEQA is concerned with physical changes to the environment, the impacts of a proposed project ordinarily are compared to the actual conditions in the vicinity of the project as they existed at the time the environmental analysis was commenced. (CEQA Guidelines, § 15125, subd. (a).) This is supported by a long line of authority holding that the baseline must reflect the existing physical conditions, rather than future conditions hypothetically allowable under plans or regulations. (See, e.g.,

8

*Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 320-322 [air pollution effects of project to expand refinery must be measured against existing emission levels rather than levels that would have existed had refinery operated at maximum permitted capacity]; *Environmental Planning & Information Council v. County of El Dorado* (1982) 131 Cal.App.3d 350, 354, 357-358 [effects of proposed general plan amendments must be compared to existing physical conditions, rather than to development permitted under existing plan]; *San Joaquin Raptor Rescue Center v. County of Merced, supra*, 149 Cal.App.4th at pp. 657-658 [baseline for proposed expansion of mining operations must be existing operations, not hypothetical peak operations]; *City of Carmel-by-the-Sea v. Board of Supervisors* (1986) 183 Cal.App.3d 229, 246-247 [effects of rezoning must be compared to existing real conditions on ground, rather than development allowed under prior land use plan]; *Fat v. County of Sacramento* (2002) 97 Cal.App.4th 1270, 1277-1281 [agency properly used existing physical conditions as baseline even though they resulted from prior illegal activities].) A departure from the normal rule is appropriate only in "unusual" circumstances where an analysis based on existing environmental conditions would be "uninformative or misleading." (*Neighbors for Smart Rail, supra*, 57 Cal.4th at pp. 451-453; accord, *POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, 78-79.)

Here, the City followed the normal rule, describing the existing physical conditions in the area affected by the project and analyzing the potential environmental impacts of the project against that baseline. Nevertheless, Citizens argues that the EIR is deficient because it did not analyze the impacts of the changes *on the Alhambra SPD*. Citizens contends that because the project changed the boundaries of the Alhambra SPD, allowing increased building heights in the area between 26th Street and 29th Street, the EIR should have specifically analyzed the impacts of the project in relation to what was allowed under the land use regulations of the Alhambra SPD.

9

However, CEQA requires consideration of the potential environmental effects of the project approved by the public agency, not some different, hypothetical project. (*County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 199; *Rio Vista Farm Bureau Center v. County of Solano* (1992) 5 Cal.App.4th 351, 372.)  Here, the project approved by the City was a comprehensive scheme—it did not merely alter height restrictions that applied under the Alhambra SPD's rules, it also increased the maximum allowable heights for various base zones within the Central City SPD (namely, C-2, RMX and OB).  The EIR appropriately analyzed the potential physical impacts of development that could occur, assuming that development would be constructed to the new maximum allowable heights for each zoning designation.  Citizens cannot show that limiting the EIR's analysis to the impacts of changing the Alhambra SPD's height restrictions would have provided a more accurate picture of the project's impacts.  To the contrary, it may have presented an unrealistic assessment of the project, minimizing its potential impacts.

Further, as discussed above, CEQA is concerned with the effects a project will have on the physical environment, not the effects it will have on existing land use plans. (*Environmental Planning & Information Council v. County of El Dorado, supra*, 131 Cal.App.3d at p. 354.)  As a consequence, the proper starting point for an EIR's impacts analysis ordinarily is the existing physical condition of the property, not the potential future condition of the property under existing development standards.[3]  (*Communities*

---

[3]    This is not to say that there is no place in an EIR to compare a project's impacts to projected future conditions under a previously adopted plan.  Such matters are appropriately considered in an EIR's discussion of the project's cumulative effects and in the EIR's discussion of the "no project" alternative.  (*Neighbors for Smart Rail, supra*, 57 Cal.4th at p. 454; § 21083, subd. (b)(2); CEQA Guidelines, §§ 15130, 15065, subd. (a)(3), 15126.6, subd. (e); see also CEQA Guidelines, § 15125, subd. (a).)  But as our Supreme Court has explained, the baseline for determining whether a proposed project's

*for a Better Environment v. South Coast Air Quality Management Dist., supra*, 48 Cal.4th at pp. 320-322.) The City's EIR adhered to the normal rule of comparing the impacts of the project to the actual environmental conditions. Citizens has not shown that the EIR was deficient, or that this approach rendered the EIR's analysis uninformative or misleading. Accordingly, Citizens has not shown that the City abused its discretion.

Citizens' chief complaint is that the EIR failed to evaluate the significance of allowing taller buildings "in an area previously designated as a 'residential preservation transition buffer zone.' " But that is precisely what the EIR did when it analyzed the environmental impacts of allowing taller buildings in the area between 26th Street and 29th Street.

Although the *draft* EIR did not frame the discussion in terms of the effects of moving the Alhambra SPD's western boundary—because it assumed that boundary already had been moved—the final EIR disclosed that because the 2016 Ordinances had to be rescinded, the City would be including a new legislative approval to move the boundary and bring the conditions of the project into conformance with the environmental conditions discussed in the draft EIR. The final EIR expressly discussed the differences in height restrictions and other limitations under the Alhambra SPD and Central City Specific Plan, and explained how the revisions did not alter the draft EIR's significance conclusions.[4]

_____

environmental impacts may be significant normally is *not* the same as the no project alternative. (*Neighbors for Smart Rail*, at p. 454.)

[4] The current physical conditions for the 26th through 29th Street area (like the other areas subject to the proposed Central City Specific Plan) were identified and the environmental impacts of the new guidelines and policies in the proposed project were assessed against that baseline. When the City rescinded the 2016 Ordinances, the three-block area was effectively returned to the Alhambra Corridor SPD. This altered the special planning designation and required new legislative action for the Central City Specific Plan, but it did not alter any potential impacts or existing physical conditions.

11

Citizens has failed to show—or even attempt to show—that the EIR's significance conclusions are not supported by substantial evidence, despite having the burden to do so. (*South County Citizens for Smart Growth v. County of Nevada* (2013) 221 Cal.App.4th 316, 330 (*South County Citizens*); *Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1266.) Mere disagreement with an EIR's conclusions does not establish that the analysis which led to those conclusions was deficient. (*North Coast Rivers Alliance v. Marin Municipal Water Dist. Bd. of Directors* (2013) 216 Cal.App.4th 614, 627-628.)

Citizens further argues that the EIR's analysis was deficient because (1) it failed to use a different threshold of significance when assessing impacts in the area formerly designated as a residential preservation transition buffer zone,[5] as allegedly required by CEQA Guidelines section 15064, and (2) it failed to evaluate the project's consistency with the Alhambra SPD, as allegedly required by CEQA Guidelines section 15125. The City has filed a motion to strike these arguments, contending they are not properly before us on appeal. We are inclined to agree. The trial court refused to consider such arguments because they were not timely presented, and Citizens' opening brief fails to show how the trial court's ruling was in error.[6] (*Regency Outdoor Advertising, Inc. v.*

The EIR's analysis of the physical environmental impacts of applying the new Central City plans and policies to the three-block area had already been completed and no further analysis was required.

[5]    Citizens apparently assumes that because the area previously was part of a "residential preservation transition buffer zone," the impacts from allowing taller buildings in that area necessarily would be more significant. But it produced no evidence to show this is true. Citizens also fails to identify or discuss any physical differences between the area between 26th and 29th Streets and the remainder of the Central City SPD area that might compel additional analysis in the EIR.

[6]    Citizens argued in its opening brief in the trial court that the City violated CEQA by, among other things, failing to evaluate the significance of impacts caused by

*Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1333; *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013.)

But even if we assume Citizens properly raised the claims below, it has not adequately supported them on appeal. For example, it has not shown what thresholds of significance were used by the City, why the City's thresholds were improper, or how they were prejudicial to the EIR's impacts analyses. Similarly, Citizens has failed to explain why the EIR should have discussed the project's inconsistencies with a plan (the Alhambra SPD) that, upon approval, expressly would no longer apply. (*South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal.App.5th 321, 353 [EIR not required to discuss inconsistencies with requirements for special use district where proposed project would be rezoned out of that area]; *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 543-544 [EIR not required to discuss inconsistencies with county general plan where, upon approval, project would be governed by general plan of city, rather than county]; CEQA Guidelines, § 15125, subd. (d).)

For all of these reasons, we conclude that Citizens failed to meet its burden to show that the EIR did not properly analyze the project's environmental impacts.[7] (*Saltonstall v. City of Sacramento* (2015) 234 Cal.App.4th 549, 581 [deferential standard of review applies to challenges to the scope of an EIR's analysis of a topic and the methodology used for studying an impact]; *Chico Advocates, supra*, 40 Cal.App.5th at p. 849, fn. 6 [agency's choice of a significance threshold will be upheld if supported by

shrinking the boundaries of the Alhambra SPD, "taking into account the purpose of the Alhambra SPD's height restrictions." But Citizens did not argue that the City used an improper threshold of significance, and CEQA Guidelines section 15064 was not cited until its reply. CEQA Guidelines section 15125 was not cited in either the opening brief or the reply.

[7] Because we reject these arguments on the merits, we deny the City's motion to strike.

13

substantial evidence]; *South County Citizens, supra*, 221 Cal.App.4th at p. 330 [petitioner must lay out the evidence favorable to the other side and show why it is lacking].)

III

*Recirculation of EIR*

Citizens also argues that the City violated CEQA by failing to recirculate the EIR despite making significant changes to the project after the close of the public comment period.  We disagree the changes to the final EIR required the City to recirculate the EIR.

When new information has been added to a previously circulated EIR, the lead agency may be required to recirculate the EIR.  (§ 21092.1; CEQA Guidelines, § 15088.5, subd. (a); *Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1126-1130 (*Laurel Heights II*).)  However, recirculation is required only when the new information is "significant."  (§ 21092.1; *Laurel Heights II, supra*, at pp. 1126-1127.)

New information added to an EIR is "significant" when the EIR has been changed in a way that deprives the public of a meaningful opportunity to comment upon a *substantial* adverse environmental effect of the project or a feasible way to mitigate or avoid such an effect.  (*Laurel Heights II, supra*, 6 Cal.4th at p. 1129; CEQA Guidelines, § 15088.5, subd. (a).)  Recirculation is required when the new information discloses: (1) a new substantial environmental impact; (2) a substantial increase in the severity of an environmental impact (unless mitigated to a level of insignificance); (3) a feasible project alternative or mitigation measure that clearly would lessen the environmental impacts of the project, but which the project's proponents declined to adopt; or (4) that when the draft EIR was so fundamentally and basically inadequate and conclusory in nature that public comment on the draft was effectively meaningless.  (*Laurel Heights II*, at pp. 1129-1130; accord, *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 302-303; CEQA Guidelines, § 15088.5, subd. (a).)  But recirculation is not required if the new information merely clarifies, amplifies, or makes

14

insignificant modifications to an otherwise adequate EIR.  (*Laurel Heights II*, at p. 1130; accord, CEQA Guidelines, § 15088.5, subd. (b).)

In determining whether an agency erred in deciding not to recirculate an EIR, we apply the substantial evidence standard of review.  (*Laurel Heights II, supra*, 6 Cal.4th at p. 1135; *Silverado Modjeska Recreation & Park Dist. v. County of Orange, supra*, 197 Cal.App.4th at p. 304.)  The party challenging the EIR bears the burden of demonstrating that the agency's decision is not supported by substantial evidence.  (*Santa Clarita Organization for Planning the Environment v. County of Los Angeles* (2007) 157 Cal.App.4th 149, 158; accord, *South County Citizens, supra*, 221 Cal.App.4th at p. 330 [petitioner bears burden of proving a double negative, that there was no substantial evidence to support the determination that the new information was not significant].)

Here, Citizens claims rescission of the 2016 Ordinances and the addition of the 2018 Ordinance was significant new information that required the City to recirculate the EIR.  Citizens argues that eliminating the Alhambra SPD's height restrictions in the area between 26th Street and 29th Street allowed taller developments that, in turn, will cause "new and exacerbated" environmental impacts, such as increased traffic and noise.

The EIR, in contrast, concluded the new information was not significant because the draft EIR assumed the area already had been removed from the Alhambra SPD. Therefore, the change could have no impacts beyond those already addressed in the draft EIR.  Substantial evidence supports the EIR's conclusion.

As discussed earlier, the City properly used the existing physical conditions in the area as the baseline for its environmental analysis.  The City's draft EIR analyzed the potential impacts of the project, including its increased maximum allowable building heights, relative to the existing conditions in the area.  Because the information added to the final EIR had no effect on the existing physical conditions or the maximum heights allowed under the project, the City correctly concluded that the new information did not alter the EIR's analysis of the project's environmental impacts.  (*Residents Against*

15

*Specific Plan 380 v. County of Riverside* (2017) 9 Cal.App.5th 941, 964-968 [changes to configuration of master plan community did not require recirculation because the revisions would not cause impacts beyond those studied in the EIR].)

Recirculation is not required simply because new or different information was added to the EIR. (*South County Citizens, supra*, 221 Cal.App.4th at p. 328.) "As the California Supreme Court observed in [*Laurel Heights II*], 'the final EIR will almost always contain information not included in the draft EIR' given the CEQA statutory requirements of circulation of the draft EIR, public comment, and response to these comments prior to certification of the final EIR. [Citation.] But '[r]ecirculation was intended to be an exception, rather than the general rule.' [Citation.]" (*South County Citizens*, at p. 328.)

Citizens has failed to show how the revisions to the City's final EIR deprived the public of a meaningful opportunity to comment upon a substantial adverse environmental effect of the project or a feasible way to mitigate or avoid such an effect. The revisions did nothing to change the environmental impacts of the project analyzed in the EIR. (See *Spring Valley Lake Assn. v. City of Victorville* (2016) 248 Cal.App.4th 91, 108 ["As the revisions did not change the nature of the potential impacts, their likelihood to occur, or the mitigation for them, we cannot conclude the revisions deprived the public of a meaningful opportunity to comment on a substantial adverse environment effect"].) Indeed, the purpose of the 2018 Ordinance was to bring the project into conformance with what was analyzed in the draft EIR.

The draft EIR analyzed the potential impacts of the development that could occur under the maximum allowable building heights under the Central City Specific Plan, relative to the existing conditions in the area. The new information discussed in the final EIR had no effect on the maximum allowable building heights under the Central City

16

Specific Plan or the existing building heights in the area. It follows that the information did not affect the analysis in the draft EIR.[8]

Citizens also claims that the City was required to recirculate because the draft EIR was "fundamentally inadequate and misleading" insofar as it falsely represented that the project would not change the boundaries of the Alhambra SPD. Yet Citizens ignores that, at the time the draft EIR was prepared, the area between 26th Street to 29th Street was *not part of* the Alhambra SPD, having been removed by the 2016 Ordinances. Thus, the draft EIR's representation was not misleading or false.

When the City subsequently rescinded the 2016 Ordinances, the draft EIR's representation that the project would not change the boundaries of the Alhambra SPD *became* false. But we are not persuaded this means the draft EIR was so "inadequate and conclusory in nature" that meaningful public review and comment were precluded. (CEQA Guidelines, § 15088.5, subd. (a)(4).)

---

[8] One notable exception is the EIR's analysis of the "no project" alternative, which takes into account future changes in the environment reasonably expected to occur if the project were not approved. (CEQA Guidelines, § 15126.6, subd. (e)(3)(A).) The final EIR revised the "no project" alternative to explain that, if the proposed project is not approved, the western boundary of the Alhambra SPD would remain at 26th Street and certain parcels would remain subject to the Alhambra SPD's existing zoning requirements, including a maximum allowable height of 35 feet within 300 feet of residential zones. But Citizens does not argue, and has not shown, that the EIR's analysis of the "no project" alternative was inadequate or that the new information rendered it a *feasible* alternative.

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                              KRAUSE         , J.


We concur:


      ROBIE         , Acting P. J.


      HOCH         , J.